No. 11,655.

GEORGE K. PRATT ET AL. VS. THE MANHATTAN LIFE INSURANCE COMPANY OF NEW ORLEANS.

The mere fact that a policy has been made " payable to the assured, his executors, administrators or assigns," does not authorize an insurance company to insist that the succession of the deceased policy holder should be placed in the hands of an administrator in order to make payment to him, when the heirs have been placed in possession by order of court, unless special circumstances shown, which would make a payment to the heirs dangerous.

A receipt from the major heirs, and the tutor of the minor heirs, would ordinarily protect the debtor of a succession when the heirs have been, by orders of court, placed in possession.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

The defendant company issued to Dr. Samuel Logan two policies of insurance, one for the sum of five thousand dollars, and the other for sixty-seven dollars; the terms of both being substantially alike.

In each it was declared that "the company promised and agreed to and with the assured, his executors, administrators or assigns, well and truly to pay, or to cause to be paid to the said assured, his executors, administrators or assigns, within ninety days after due notice and satisfactory evidence of the death of said Samuel Logan, and proof of the just claim of the assured under this policy."

The assured died in New Orleans on the 12th of January, 1893. He left as his heirs seven children—George King Logan, Elizabeth Young Logan, wife of James McConnell, Jr., and five minors, of whom Dr. George K. Pratt was confirmed the tutor on the 13th March, 1893.

On the 19th of September, 1893, George K. Logan, Elizabeth V. Logan, and the five minors under the tutorship of Dr. Pratt, were recognized as the sole heirs of Samuel Logan, and ordered to be placed in possession of his succession as such.

The insurance company having called in question the right of the two major heirs and the tutor to receive payment of the amount due under the policy, the present suit was instituted against it on January 12, 1894, for the recovery of the same, with legal interest from May 1, 1893. The demand was first met by an exception of no cause of action, and an exception that plaintiffs were without capacity or right to institute the proceedings, and

these exceptions being overruled, defendant answered, pleading the general issue.   Judgment was rendered in favor of the plaintiffs for five thousand and sixty-seven dollars, with legal interest from 1st of May; defendant appealed.

*James McConnell, Jr.,* for Plaintiffs, Appellees, cites:   43 An. 248; 43 An. 316; 30 An. 93, 388; 36 An. 744; 34 An. 39; 35 An. 826; 45 An. 737; 31 An. 235.

*Dinkelspiel & Hart* for Defendants, Appellants, cite: C. C., Arts. 1764, 1963, 1967; 3 An. 502; 45 An. 736.

Argued and submitted March 27, 1895.
Opinion handed down April 8, 1895.
Rehearing refused May 20, 1895.

The opinion of the court was delivered by

NICHOLLS, C. J.   Only two questions are submitted to us by the appellant.

It insists, first, that the policies declared on having been made payable " to the assured, his administrators or assigns," it has the right to insist that an administrator should be appointed to the succession of Samuel Logan, to whom it can make payment, claiming that a payment to plaintiffs in this suit would not give to it the absolute protection which it was entitled to have under its contract; and, second, that if plaintiffs be entitled to a judgment, interest is recoverable only from December 19, 1893, that is, ninety days after the heirs were recognized and placed in possession.

We find in the record a correspondence between James McConnell, Jr., the husband of one of the heirs, and the attorney of the succession and heirs; Ferd. Marks, the Louisiana agent of the defendant company, and Dinkelspiel & Hart, the company's attorneys.

The first letter bears date October 25, 1893, and is written by Mr. McConnell to Ferd. Marks.   The writer declared that it appeared to be impossible to collect from the company, without a lawsuit, the amount claimed by the heirs under the policies; that demand had been made upon it by the tutor of the minor children, who was administering the Logan succession in that capacity; that he wrote to

inquire whether it would pay the amount, and when; that unless paid without further delay, legal proceedings would be taken for its collection; that the heirs offered to give the company the receipt of the tutor as administering the succession, or his receipt as the representative of the minors, coupled with that of the major heirs, or an order of court, directing the company to pay the amount to the tutor, or all of them combined.

On the 31st October the company telegraphed Marks that it forwarded that day "draft of Logan claim."

On November 3 Mr. McConnell wrote Marks that he supposed from this dispatch, which had been shown him, that the draft had been then received. That the amount due was five thousand and sixty-seven dollars, with legal interest from May 1, 1893, and he would like to know whether the claim would be paid that day. Marks replied that the check was in the hands of Dinkelspiel & Hart, and to call upon them.

On the same day, November 3, the latter wrote Mr. McConnell that they were at last in possession of the papers from the defendant company in the matter of the claim, and suggested that they meet and prepare a rule in the matter to be tried on the next Monday.

On the 7th they wrote another letter to him, regretting that the interview suggested had not taken place, and requesting that they meet so as to have the rule tried and judgment rendered on the next Monday; that they had the draft ready to turn it over when judgment, such as they desired, was rendered. On the next day Mr. McConnell wrote them to know what it was they required before paying over the amount. On the 9th of November they replied that they would turn over to him the draft of the company on payment of the policy upon the rendition of a judgment ordering the company to pay to Dr. Pratt, tutor of the minor children, and agent of the major heirs. That they required this because the policy, they understood, in terms, made it payable to the administrator; that he might take the rule in the succession of Dr. Logan; that they would accept service; that all the proof this required could be made by *ex parte* affidavits; that the proof was as to the name and ages of the children, and that there were no descendants of predeceased children; that they would turn over the draft as soon as the judgment was rendered without any delay.

On the 21st November McConnell wrote Mr. Marks that Dinkel-spiel & Hart stated to him that they were authorized to pay only the face value of the policy without interest, and would pay only on obtaining a receipt of payment in full upon their turning over the principal; that he protested against this action, and insisted upon the payment of the interest, then amounting to about one hundred and twenty-five dollars.    On the 4th December Dinkelspiel & Hart wrote to McConnell that the letter of the contract being that the money was not to be paid except to an administrator, they did not see how the company was liable for interest until a demand had been made upon it by an administrator, and they would be obliged to defend any suit that might be brought.

The present action followed.

No question has been at any time raised as to assured having a joint claim under the policy.    Notice and evidence of death were furnished to the company on or before the 1st of February, 1893. The policies became payable on the 1st of May, 1893, and interest was due on them from that time.    No tender of payment is shown. The tutor and major heirs were authorized to receive payment at the maturity of the debt.    We find no force in the position taken by the defendant, that by virtue of its "*contracts*" it had the right to insist that the succession of Dr. Logan should have been placed in charge of an administrator in order that payment should be made to him alone.    The addition of the words "his executors, administrators or assigns" after the word "assured" making the policies payable "to the assured, his executors, administrators and assigns," left the contracts precisely in the condition they would have been had those words been left out with payment to be made to the heirs, the executors or the administrators, as the one or the other would properly and legally represent the succession.

There is nothing in the decision of this court in Moise, Tutor, vs. Mutual Reserve Fund Life Association, 45 An. 736, which would warrrant a contrary opinion.    In that case the assured lived and died in Kentucky, the place of his domicile—the contract of insurance was made there with an insurance company having its domicile in New York.    It so happened that some of his minor children were in Louisiana at the time of the father's death, to whom a tutor was appointed in the Civil District Court for the parish of Orleans.    The tutor brought suit upon the policy, against the company, by service upon an agent who represented it in Louisiana, evidently for Louis-

iana business alone.  We held that the tutor was not authorized to bring the suit; that the domicile of the deceased was in another State, his succession opened there, the *situs* of the claim upon the policy was where the succession was opened, and that it was not a Louisiana asset falling under the administration and control of the Louisiana tutor.  The facts of that case are entirely different from those in the present case.  The domicile of Dr. Logan was in this State, the tutor of the minor children was properly appointed here, the contract sued on was made in Louisiana, the *situs* of the claim is here, and the company is properly represented by a Louisiana local agent.

If defendant's legal position be correct, then the debtor, upon any claim whatever, would have the right equally with the defendant to force the succession to which the debt should be due into the hands of an administrator for the purpose of receiving payment.  Any debtor would be entitled to the same " absolute protection " against contingencies which the defendant would have, and, therefore, successions without debts, with assets amounting to hundreds of thousands of dollars, would have to be subjected to administrators' commissions, advertisements, court charges, and the other expenses. necessarily incidental to placing of an estate under administration, simply to satisfy the groundless fear of a debtor owing the estate a hundred dollars.  It is difficult to imagine that the defendant really and seriously maintained such a proposition.

It is not suggested even that under the facts of this particular case there is danger to be apprehended from defendant's making payment to the plaintiffs.  No attempt has been made to show the existence of any fact which would go to weaken the finding made by the District Court that the plaintiffs are the sole heirs of Dr. Logan.  The succession was opened by the death, on the 12th January, 1893, and the heirs were recognized and placed in possession as long ago as September 19, 1894, and yet no one has made a move in the direction of having an administrator appointed.  We have no reason to suppose the succession owes any debt, or that any fact exists which makes such an appointment necessary or advisable.  All that defendant can ask, is that it be protected against a double payment.  Payment to the plaintiffs herein, under the judgment herein rendered in their favor, will in our opinion be a perfectly safe payment and defendant had no grounds for thinking otherwise.

We think the judgment correct, and it is hereby affirmed.