(91 South. 539)

No. 24586.

APPALACHIAN CORPORATION, Inc., v. BROOKLYN COOPERAGE CO., Inc.

(April 3, 1922.)

*(Syllabus by Editorial Staff.)* ·

**1. Estoppel ⬅═3(3)—Indemnity ⬅═14—Plaintiff held not estopped or concluded by judgment in action against it by third person.**

An owner of a building, sued for an injury sustained by a night watchman while the building was still in possession of one from whom it purchased the building, was not estopped by its denial of the defective condition of a door and averment that the cause of the accident was the watchman's carelessness, or concluded by the judgment against it, from suing the seller of the building on the theory that the accident was due to its negligence, as there was no legal inconsistency, or inconsistency in fact, between its defense to the first action and the theory on which recovery was claimed in the second; and, even if there was, it gained no advantage, and ·the seller was not injured.

**2. Estoppel ⬅═3(1)—Parties not bound by judicial allegations which terminate unsuccessfully.**

Parties are not bound by judicial allegations of fact which terminate unsuccessfully.

**3. Indemnity ⬅═13(2)—Tort-feasors not ordinarily entitled, but may be when only technically at fault.**

As a general rule, when two or more parties acting in concert commit a wrongful act damaging a third party, the party compelled to pay for the injury has no action for indemnity against the other parties to the wrongful act, but if the actual fault or proximate cause of the injury is attributable to one of the parties, and the other is only technically or constructively at fault, the rule does not apply, and the latter may have indemnity from the one primarily responsible.

**4. Indemnity ⬅═13(2)—Owner of building held liable for injury held entitled to indemnity from party at fault.**

Under Code, art. 2315, providing that whatever causes damage to another obliges him by whose fault it happens to repair the damage, where the owner of a building which was still in ·the possession and control of one from whom it purchased it was held liable to a night watchman, injured by a door falling on him, it had a cause of action against the seller of the building whose employees primarily and proximately caused the injury by their negligence, within the scope of their employment.

**5. Indemnity ⬅═13(1)—Limitation of actions ⬅═56(2)—Prescription does not run against cause of action for indemnity until payment of judgment.**

The obligation of one in possession of a building to the owner, who was held liable to a third party for an injury caused by a door falling on him, was for reimbursement of money paid for and on its behalf, and as the right to reimbursement was not complete and en-·forceable until payment or discharge of the obligation to the third person, the right ·of action did not arise until payment and prescription did not begin to run until then.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by the Appalachian Corporation, Inc., against the Brooklyn Cooperage Co., Inc. From a judgment for defendant, plaintiff appeals. Judgment annulled and reversed, exception and plea ·overruled, and case remanded.

Hall, Monroe & Lemann and Nicholas Callan, all of New Orleans, for appellant.

Edward Rightor, of New Orleans, for appellee.

By Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.

THOMPSON, J. The plaintiff brings this appeal from a judgment which dismissed the suit on an exception of no cause of action. The suit is for $3,406.60, being the principal, interest, and cost of a judgment rendered by this court against the present plaintiff and in favor of George A. Lincoln, reported in 146 La. page 23, 83 South. 364, 7 A. L. R. 1697. That judgment became final on December 1, 1919, and was paid by the plaintiff shortly thereafter. ·This suit was filed November 29, 1920. The pertinent facts set out in the petition, and found in the prior suit, succinctly stated, are as follows:

The Appalachian Corporation purchased

from the Brooklyn Cooperage Company on July 24, 1917, the warehouse occupying the entire square bounded by Erato, Thalia, South and Front streets in this city. On the evening of the second day after the plaintiff purchased the property, about 5:30 o'clock, George A. Lincoln, the night watchman of the premises, was seriously injured by one of the inside iron doors, weighing about 800 pounds, falling on him. In this building there were a number of iron doors. They were supported by rollers attached to the top, which moved on a slightly inclined stationary rail or bar fastened to the wall. The purpose of the doors was to prevent fire spreading from one compartment of the building into another. To the end of the doors weights were attached to facilitate their opening and closing. The door which collapsed and injured Lincoln was not so equipped. It had been the custom of the cooperage company to keep this particular door open. In closing up the building on the evening in question, the superintendent of the cooperage company directed the engineer of the company to close this door, which the engineer did in such a manner as to leave it off of the rail and simply standing up against the rail, "thus forming a trap into which the plaintiff (Lincoln) fell when he attempted to push it open." It is alleged that the cooperage company was in possession of the building at the time of the accident and injury to Lincoln, and had been for a number of years; that said company knew, or should have known, of the defective condition of the door; that it had been the custom of said company to keep the door open; that plaintiff herein was not in possession of the building, and did not know, and could not in reason have been expected or required to know, the condition of the door, nor the manner in which it was operated; that the superintendent who ordered the door closed and the engineer who closed it were the employees of the cooperage company, and were acting within the scope of their employment; that plaintiff had no control over the said employees; that the cooperage company knew that said night watchman, the said Lincoln, would have to open the said door, and that it was necessary for him to do so in making his usual evening rounds. It is alleged that the proximate cause of the injuries sustained by Lincoln was the negligence of the superintendent in ordering and the engineer, in closing, said door, both knowing that the door was not provided with a proper weight to permit it to open and close safely and normally, and, further, in closing the door in such a manner as to leave it off the rail. Lincoln brought suit against the Appalachian Corporation for damages for his injury, with the result, as previously noted.

[1, 2] 1. It is argued in support of the exception of no cause of action that the plaintiff having in the former suit denied the defective condition of the door, and having averred that the cause of the accident was the plaintiff's (Lincoln) careless handling of the door, and the court having found that the plaintiff herein was guilty of negligence which caused the injury, all inquiry into the question of negligence is closed, and that the plaintiff cannot now gainsay or contradict what was alleged in the former suit, and cannot deny the facts as found by the court in that suit. Second, that one guilty of a fault which caused injury or damage to another and who has been cast in damages for such injury and has paid the same, can have no action for indemnity against his coadjutor in the wrongful act which brought about the damage. There is no legal inconsistency, nor inconsistency in fact, between the defense advanced in the Lincoln case and the theory on which recovery is claimed in this case, that could form the basis of either a legal or an equitable estoppel. The question at issue in that suit was the liability of the Appalachian Corporation to Lincoln, and the court was not called upon to consider and did not

determine the liability or the negligence of any one else. The present defendant was not a party to that suit, and could not have been brought into the suit except at the instance of the plaintiff, Lincoln. The plaintiff as defendant in that suit had the right to meet the action with such defenses as were open to it under the law. But if it be conceded that the allegations of the answer of the Appalachian Corporation, or the position of defense which it then assumed in its attempt to defeat that action, are inconsistent with the theory of the present suit, there is nothing wrong or immoral in such inconsistency, and no injury resulted or can result to the defendant. The plaintiff has gained no advantage over the defendant by such defense, nor has defendant's situation been altered to its detriment. But aside from all of this, parties are not bound by judicial allegations of facts which terminate unsuccessfully. Godwin v. Neustadtl, 47 La. Ann. 857, 17 South. 471; Doullut v. Smith, 117 La. 491, 41 South. 913; Brooklyn Cooperage Co. v. Cora Planting Co., 137 La. 814, 69 South. 195. In the Lincoln case the questions as to who was in actual possession and control of the building and as to who was primarily responsible for the defective condition of the building, except as between Lincoln and the defendant, were not in issue. The liability of the Appalachian Corporation was predicated upon the duty which it owed of providing a safe place for Lincoln to perform his duty; to quote from the decision:

"That its legal relation in the matter was the same as would have been that of the cooperage company had that company remained the owner."

Our opinion is that the judgment rendered on the facts presented in the former suit is not conclusive against the plaintiff's cause of action in this suit; the present defendant not being a party to that suit.

[3, 4] 2. It is undoubtedly the general rule of law and jurisprudence that where two or more parties, acting in concert, or are legally held to have acted in concert, commit a wrongful act from which damages result to a third party, the party who is compelled to respond and to pay for the injury can have no action for indemnity against the other party or parties to the wrongful act. The rule has its foundation in public policy, that no one can allege his own turpitude or claim an advantage for his own wrong. The courts in such a case will leave the parties in the position in which they have placed themselves, and will not undertake to adjust equities between them, nor to inquire into the comparative or relative culpability as between them. Every rule, however, has its exception, and where, as in this case, the actual fault of the proximate cause of injury is attributable to one of the parties and the other is only technically or constructively at fault, from failure or omission to perform some legal duty, the general rule will not apply, and indemnity may be had against the one primarily responsible for the act which caused the damage. Whatever act of man, declares the Code (article 2315) that causes damage to another obliges him by whose fault it happened to repair the damage. If the facts alleged in the petition are true, and they are so accepted for the purpose of this discussion, the defendant company was at fault, and through its employees created the situation which brought about the injury to Lincoln. The plaintiff, not being in possession of the property, and having no knowledge of the defective condition of the door and no opportunity to prevent the accident which befell Lincoln, could not in law or morals be said to be a culpable participant in the act of negligence.

The precise question involved has not been squarely presented to the courts of this state for adjudication. In the Meunier v. Duperron Case, 3 Mart. (O. S.) 286, the syllabus does not indicate the full import of the de-

cision. It reads: "No repetition [reparation] allowed to a wrongdoer." The facts of the case, as they appear from the opinion, were that the plaintiff as constable, at the instigation of the defendant, had arrested a free negro woman and shipped her off. The constable was prosecuted, found guilty, fined, imprisoned, and condemned to pay heavy damages. Having suffered the imprisonment and paid the fine and damages, he brought suit against the party at whose instance he made the arrest, to pay his proportion of the money disbursed. A demurrer to the action was sustained, and recovery was denied, but on the ground that the act of the plaintiff was a crime; that he had been found guilty and punished and could not throw the burden of his sentence on another, under pretense that he was by him persuaded to commit the crime. The court in the course of its opinion, however, made the following pertinent observation:

"If nothing more than a civil suit had been brought against the appellant [plaintiff] and a reparation in damages there awarded in favor of the party injured, the appellant, on showing that he acted in good faith, might, perhaps, have maintained an action against the person by whose fraud or fault he had been induced to commit the act."

The pronouncement of the court is applicable to this case. The Appalachian Corporation was, in a civil suit, held liable and compelled to pay damages for an injury caused, not by any crime or criminal negligence on its part, independently of or in combination with the defendant, but because of the ownership of the building and its legal duty to keep the building in safe condition. In a more recent case, Sutton v. Champagne et al., 141 La. 470, 75 South. 209, one of the defendants, Champagne, had given his minor son a rifle, which the son had been discharging in the streets. The boy gave the gun to the minor son of the other defendant, Mrs. Sill. This latter boy fired the gun, and killed the plaintiff's son. The father of the boy who gave the gun to his son and the mother of the boy who killed plaintiff's son were sued for damages and held liable in solido, but Mrs. Sill was given judgment over against Champagne because of the fact that Champagne was primarily responsible for the accident. The court said:

"The solution of the problem must be that, while she [Mrs. Sill] is liable to the plaintiff, she has recourse over against the person who by his act brought the responsibility upon her, and we shall so decide."

That case can hardly be differentiated in principle from the present one. The fact that the parties were jointly sued can make no difference. If Mrs. Sill had been sued and condemned separately, the principle recognized would have been equally applicable, and on paying the judgment she would have had her action against Champagne,

The case of Sincer v. Heirs of Bell, 47 La. Ann. 1548, 18 South. 755, relied on by defendant's counsel, is not in conflict with the doctrine recognized in the Meunier v. Duperron and Sutton v. Champagne Cases cited supra. That case went no further than to reaffirm the general rule that where one of several wrongdoers has been compelled to pay damages for an offense or quasi offense, he cannot compel contribution from the others who participated in the commission of the wrong. Both Sincer and Bell were charged in the same suit as being equally at fault and responsible for the defect in the scaffold which caused the injury to the workman. Bell compromised and settled his part of the damage. It was found by the court that there was no obligation on the part of Bell to furnish a safe staging for the parties injured, who were engaged at the time in the construction of the building. The case can be no authority under the facts alleged in this case.

Corpus Juris, under the head of "Contribution," vol. 13, p. 829, gives the general rule against contribution, as well as the many exceptions to that rule in which indemnity can be had.   On page 831, par. 24 (d) it is said:

"Another exception, as well settled as the rule itself, is that one who is only technically a joint wrongdoer and has not actually joined in the wrong can, on being compelled to pay damages for the wrong, exact indemnity or contribution from the actual tort-feasor."

This exception, however, says the author, is never applicable where both parties are in the wrong, or where the act of the one seeking the recovery was the proximate cause of the injury."

Many cases are cited sustaining the foregoing exception to the general rule.   See note, vol. 13, p. 831.   Perhaps the leading case on the subject is Gray v. Boston Gaslight Co., 114 Mass. 152, 19 Am. Rep. 324.   In that case it was said:

"The second objection taken by the defendant is that the injury was caused by the negligence of the plaintiff and defendant; that they were joint tort-feasors, and that there cannot be indemnity or contribution between them.

"When two parties, acting together, commit an illegal or wrongful act, the party who is held responsible in damages for the act cannot have indemnity or contribution from the other, because both are equally culpable, or participes criminis, and the damage results from their joint offense.   This rule does not apply when one does the act or creates the nuisance, and the other does not join therein, but is * * * exposed to liability and suffers damage.   He may recover from the party whose wrongful act has thus exposed him.   In such case the parties are not in pari delicto as to each other, though as to third persons either may be held liable."

In the case of the Pennsylvania Steel Co. v. Washington & Berkeley Bridge Co. (D. C.) 194 Fed. 1011, it was held:

"Careful consideration of these and other similar authorities must inevitably lead to the conclusion that in negligence cases based not upon willful wrongdoing, but growing out of legal duties and obligations—acts not malum in se but malum prohibitum—a clear distinction must be drawn between the liability of the party primarily negligent and that of one secondarily so to the extent of being liable to a third party injured.   In such case, it is well settled that the second party, while he may not escape liability to the third party injured, may hold the first party, primarily negligent, for indemnity.   Such ruling is sound in both law and good morals, in that it secures greater care on the part of all engaged in the work, and lessens the danger of accidents."

The doctrine announced in the two cited cases seems to be the rule followed by the courts of most of the states, though, as stated in Corpus Juris, vol. 13, p. 829, there is not complete unanimity among the decisions regarding facts which will allow or defeat the right to contribute among tort-feasors; most of the confusion, it is said, being due to a failure to differentiate between the liability of tort-feasors to third persons and for contribution among themselves.

Our conclusion is that the allegations of the plaintiff's petition showing that the fault which caused the damage which the plaintiff has had to pay was due primarily and proximately to the negligence of the employees of the defendant acting within the scope of their employment, and that plaintiff was only technically and constructively at fault, a cause of action is fully disclosed against the defendant and the exception to the contrary should have been overruled.

[5] 3. The defendant has filed in this court a plea of prescription of one year, on the theory that the plaintiff's action, if any it has, arises from a tort.   It is true that the suit of the injured party grew out of a tort; and, while the present suit is a sequence of the former suit, it does not necessarily follow that the two causes of action are the same, and are to be governed by the same law of prescription.   The obligation of the

defendant to Lincoln was that of a tort-feasor, whereas its obligation to the plaintiff is for reimbursement of money paid for and on its behalf, which under the law the defendant was liable for and should have paid.

It is stated in Corpus Juris, vol. 13, p. 833, that the limitation applicable to an action for contribution is that fixed for an implied contract. As the right to enforce contribution is not complete and enforceable until payment or discharge in whole or in part of the common obligation, the statute of limitations does not begin to run against a claim for contribution until plaintiff has discharged the common debt. The plaintiff's right of action did not arise until it had paid the judgment, and that payment was made within the year following the finality of the judgment, and the suit was filed before the lapse of a year from either the finality of the judgment or its payment. In South Arkansas Lumber Co. v. Tremont Lumber Co., 146 La. 62, 83 South. 378, it was held that a person cannot bring suit until his cause of action has accrued, and until a cause of action has accrued prescription cannot run against it, citing Jones v. T. & P. Ry. Co., 125 La. 542, 51 South. 582, 136 Am. St. Rep. 339. The cause of action in the first above cited case, as in the case at bar, "only accrued to the plaintiff when it paid the judgment rendered against it as a consequence of the act of the defendant company in taking the timber."

For the reasons assigned it is ordered and decreed that the judgment appealed from be annulled and reversed; that the exception of no cause of action and the plea of prescription be overruled, and that the case be remanded to the lower court to be tried according to law and the views herein expressed; and that defendant pay the cost of this appeal, all other costs to await final judgment.