No. 2155

Second Circuit

FOSTER AND GLASSELL CO., LTD., v. KNIGHT BROTHERS

(April 10, 1926, Opinion and Decree)
(May 7, 1926, Rehearing Refused)

*(Syllabus by the Court.)*

1. **Louisiana Digest—Negligence—Par. 1; Municipalities—Par. 263.**

The driver of a truck cannot free himself or his employer from liability for damages caused by his throwing a bale of cotton upon a pedestrian who was walking along a neutral ground frequently used by persons as a passageway, by simply shouting "look out" as he threw the bale from his truck into such passageway. It was his duty to look before throwing the bale to be sure it would not hurt anyone.

Mahan vs. Everett, 50 La. Ann. 1162, 23 South. 883.

2. **Louisiana Digest—Master and Servant Par. 65, 67, 150.**

An employee is not guilty of contributory negligence in walking near a truck loaded with cotton standing near a thirty-foot zone marked off and reserved from use for unloading cotton and generally used by employees of a compress company as a passageway when the rules of the city fire department and of the compress company forbid the unloading of cotton on such reserved zone.

Muscarelli vs. Hodge, 120 La. 335, 45 South. 268.

Roff vs. Summitt Lumber Co., 119 La. 571, 44 South. 302.

**3. Louisiana Digest—Negligence—Par. 41.**

Contributory negligence will not be presumed against one injured by the negligent act of another.

Buechner vs. City of New Orleans, 112 La. 599, 36 South. 603.

Boutte vs. N. O. Terminal Co., 139 La. 954, 72 South. 513.

**4. Louisiana Digest—Negligence—Par. 20, 21.**

To constitute contributory negligence it must be shown that plaintiff voluntarily and unnecessarily exposed himself to a known danger.

Babin vs. S. W. Board, 2 La. App. 517.

**5. Louisiana Digest—Negligence—Par. 43; Appeal—Par. 625.**

Contributory negligence is an issue of fact to be determined primarily by the trial judge whose finding will not be reversed by this court unless clearly wrong on the face of the record.

**(Civil Code, Article 2315. Editor's note.)**

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo, Hon. J. H. Stephens, Judge.

Action by Foster and Glassell Co., against Knight Brothers for damages for injuries caused to the employee of the plaintiff. There was judgment for plaintiff and defendants appealed.

Judgment amended and affirmed.

Foster, Looney, Wilkinson and Smith, of Shreveport, attorneys for plaintiff, appellee.

Wilkinson, Lewis & Wilkinson, of Shreveport, attorneys for defendants, appellants.

## STATEMENT OF THE CASE

REYNOLDS, J. Plaintiff, Foster & Glassell Co., Ltd., sued defendants, Knight Brothers, to recover the sum of $650.00 with legal interest on $537.40 thereof from August 3, 1920, until paid, and with legal interest on the balance from judicial demand until paid, for injuries negligently inflicted on its employee, Pink Morris, by an employee of defendants and for compensation for which injuries its employee had obtained judgment against it under the Employers' Liability Act (Act 20 of 1914 as amended by Act 38 of 1918) and in satisfaction of which judgment it had paid its employee $537.40 on August 3, 1920.

The suit was commenced November 16, 1920.

Defendants tendered a plea of prescription of one year which plea was sustained by the court and plaintiff's suit dismissed.

Plaintiff applied for a new trial which was denied and it appealed to this court which affirmed the judgment of the trial court.

Plaintiff having been denied a rehearing by this court applied for and was granted a writ of certiorari by the Supreme Court where the judgment of the district court and of this court was affirmed in part and reversed in part. Said the Supreme Court:

"Our conclusion, therefore, is that insofar as the demand exceeds the sum alleged to have been paid by plaintiff to its employee, the plea of prescription was properly sustained; but as to the claim for $537.40, as for money paid because of the fault of defendant, it should have been overruled. For the reasons assigned the judgments of the District Court and Court of Appeal are set aside insofar as the demand for reimbursement for money paid to the extent of $537.40 is concerned, and this cause is hereby remanded to the trial court to be proceeded with according to

law and the views herein expressed. Defendant to pay costs of the Court of Appeal and of this court, all other costs to await final judgment."

On the return of the case to the District Court the defendants answered denying negligence on the part of the driver of their truck and alleging that the proximate cause of the injury to plaintiff's employee was his own negligence.

On these issues the case was tried and judgment was rendered in favor of plaintiff and against defendants for the sum of $650.00 with legal interest on $537.40 thereof from August 3, 1920, until paid, and with legal interest on the balance thereof from November 10, 1920, until paid, together with the costs of the suit.

A new trial having been applied for by defendants and denied by the court; defendants appealed to this court.

## OPINION

It is conceded by both plaintiff and defendants that the only question to be decided is whether the alleged negligence of the driver of defendants' truck or the alleged negligence of plaintiff's employee was the proximate cause of the accident.

The evidence shows that there was a zone thirty feet wide marked off around the compress where the accident occurred generally used by employees of the compress as a passageway in going to and coming and going about the compress.

This zone was marked off by a chalk line and the rules of the city fire department and of the compress company forbid the unloading of cotton on it.

Pinkney Morris, an employee of plaintiff was at work near the compress, and while walking on the reserved zone, returning from dinner, defendants' truck driver lifted a bale of cotton as high as his knees from the truck and yelling "lookout" toppled it to the ground—all at one time. The bale fell upon Pinkney Morris causing injuries to him for which he obtained judgment against plaintiff under the employers' liability act as stated.

We are of the opinion that Pinkney Morris was not guilty of negligence.

The evidence shows that the thirty-foot zone was generally used by those employed by or having business at the compress as a passageway.

George Slaughter testified, pages 10 and 20:

"Q. Now, what was Pink Morris doing?
"A. Well, he was just coming in from dinner, going to his work.
"Q. Which way was he coming from?
"A. Right up the side of the warehouse like, like he come every day.
"Q. Was that generally the way he come in?
"A. Yes, sir.
"Q. Now Pink Morris worked for who?
"A. Foster & Glassell.
"Q. What was his object in coming up that way?
"A. Well, that was generally the way he come every day, all of us come that way, by the side of the warehouse.
"Q. It was at dinner time?
"A. Yes, sir, after dinner.
"Q. He was coming there for the purpose of going to work?
"A. Yes, sir, Tom Rochelle was calling for him.
"Q. What did Tom do then?
"A. He was foreman, there.

\* \* \*

"Q. Now, was this the general pathway for employees of Foster & Glassell to go to work?
"A. Yes, sir, every one in that place come in there and the hands going to dinner passed along that wall there down to the compress and to the compress room.

"Q. Now, was that the proper place for Pink Morris to come on his way back to work?

"A. Yes, sir, along that passageway.

"Q. Now, where is the door to Foster & Glassell's warehouse, how close was he to the door?

"A. Well, a space—he was about ten or fifteen feet from the door.

\* \* \*

"Q. Now, you say you saw this cotton fall?

"A. Yes, sir, now there was a trailer behind the truck and the trailer was unloaded before Pink Morris got there and the young man, we call him young man, whoever he was, he had managed to move the trailer back and he commenced to unload the truck, he got on top, I was satisfied he didn't see him because he was not where he could have seen him; he was hot and straining himself to raise the cotton up and Pink Morris being on the opposite side and of course he threw the cotton off and it caught Pink.

"Q. Now, when he threw the bale of cotton off did you hear him holler 'look out'?

"A. No, sir, I didn't hear that.

"Q. Would you have heard it if he had hollered?

"A. Well, if he had hollered loud enough.

\* \* \*

"Q. Is it customary to holler 'look out'?

"A. It was customary to notify or to see if anyone was in danger.

"Q. Do you know anything about that thirty-foot fire line?

"A. Yes, sir.

"Q. What is the reason for it?

"A. The fire insurance requires it. They leave that space there so that in case of fire the fire wagons can get there at any time in case of fire so we have to leave it open. They require it.

"Q. Was it customary then to put cotton inside of that thirty-foot line?

"A. It was against the rules of the compress.

"Q. Then cotton was not supposed to be unloaded over that thirty-foot line?

"A. It was against the rules of the compress to put cotton on that thirty-foot

space. I was foreman there for seven years."

Thomas Rochelle testified, page 38:

"Q. And that was when Pink was coming back from dinner, was it not?

"A. Yes, sir.

"Q. Well, where was he walking, close to the warehouse or way off?

"A. He was walking close to the warehouse.

"Q. Is that generally the way the employees come back to work?

"A. Yes, sir, every one comes up that line."

Elmo Williams testified, page 67:

"Q. Were you close to the truck which was driven by Red the day Pink Morris got hurt by a bale of cotton?

"A. Yes, sir, I was fixing to pass when he threw the bale of cotton.

"Q. How close were you to the truck?

"A. I passed along by the truck, in fifteen feet of the truck."

Frank Johnson, the driver of the truck and the person who threw the bale of cotton that injured Pink Morris, testified, page 53:

"Q. Do you know or did you know how the workmen got to and from the warehouse out there where they were working when they had to go back and forth?

"A. I didn't know, sir; they come up out of all the doors; coming always.

"Q. Some one walking around nearly all the time?

"A. Yes, sir, coming and going around."

From this evidence it is perfectly clear that the passageway was generally used by the employees of the compress company in going to and coming from work.

That it was against the rules of the city fire department and of the compress company to unload cotton on the thirty-foot zone, is established by the testimony of George Slaughter who testified, page 13:

"Q. Now, as a matter of fact, these trucks unload all of the time in that driveway?

"A. No, sir, not over the fire line they don't.

"Q. But they often unload cotton in any particular place along here all the time (pointing to diagram)?

"A. Yes, sir, out in the yard.

"Q. Up against the wall?

"A. No, sir, they don't do that.

\* \* \*

"Q. You don't know whether they had the habit of unloading cotton there or not?

"A. No, sir, that was the first time that I ever seen them unload it there."

Jonas Cornelius testified, pages 21, 30, 31:

"Q. Do you know anything about that thirty-foot fire line?

"A. Yes, sir.

"Q. What is the reason for it?

"A. The fire insurance requires that. They leave that space there so that in case of fire the fire wagons can get there at any time, in case of fire, so we have to leave it open.

"Q. Was it customary then to put cotton inside of that thirty-foot line?

"A. It was against the rules of the compress.

"Q. Then cotton was not supposed to be unloaded over that thirty-foot line?

"A. It was against the rules of the compress to put cotton on that thirty-foot space. I was foreman there for seven years.

\* \* \*

"Q. Well, didn't they make a habit of dumping cotton like cotton was dumped there this day up against the wall?

"A. I can't remember any particular time; any time any truck driver came in there they wouldn't dump the cotton there up against the wall. I don't remember seeing them doing that as a habit.

"Q. But had you ever seen them doing that before this day?

"A. I don't remember any case."

Thomas Rochelle testified, page 44:

"Q. Now, that truck was in an unusual place?

"A. Well, it was not in the right place to be unloaded.

"Q. In an unusual place?

"A. Yes, sir.

\* \* \*

"Q. Don't you think that the truck being in an unusual position on the inside of the fire zone would have attracted the attention of Pink Morris?

"A. Well, I suppose he thought like this that he was going along there and didn't think he was going to throw a bale down on him."

The accident occurred at the noon hour and defendants' truck driver had just unloaded the trailer on the side opposite the reserved zone.

We do not think that Pinkney Morris should be held guilty of negligence in assuming that defendants' truck driver would violate the rules of the city fire department and of the compress company by throwing cotton from his truck onto the reserved zone.

Defendants insist that the rules forbidding the use of the reserved zone for unloading purposes were frequently violated and that it was the custom to shout "look out!" and at once throw bales of cotton from the truck to the ground there.

We think that the custom is more nearly given by Jonas Cornelius who testified, page 21:

"It was customary to notify or to see if any one was in danger."

And the testimony of defendants' truck driver who testified, page 51:

"\* \* \* got a bale of cotton and hollered 'look out!' and I understood some one to say 'throw it' and I pushed."

But defendants' truck driver was evidently mistaken about having heard some one say "throw it" for he is not corroborated in this statement and defendants' counsel do not even contend that he was

directed by any one to throw the bale of cotton before he did so.

We think that it was the duty of defendants' truck driver, before throwing the bale of cotton, to have seen that it would not injure any one or to have had some one do so for him.

Plaintiff insists that under the authority of Appalachian Corporation vs. Brooklyn Cooperage Co., 151 La. 41, 91 South. 539, that even if its employee, Pinkney Morris, had been guilty of contributory negligence, such negligence would not avail defendants as a defense in this case.

Having found that the proximate cause of the injury to Pinkney Morris was the negligence of defendants' truck driver and that Pinkney Morris was not himself guilty of negligence it becomes unnecessary to pass upon this question.

It is evident that the District Court and counsel both for plaintiff and defendants overlooked the fact that so much of the former judgment of that court and so much of our former judgment affirming its judgment as decided that that part of plaintiff's demand in excess of $537.40 with legal interest thereon from August 3, 1920, until paid, was prescribed was not annulled by the Supreme Court but affirmed, and that therefore plaintiff's right to recover more than $537.40 with interest thereon from August 3, 1920, was thereby eliminated from the case.

The evidence convinces us that plaintiff was entitled to judgment, but not for the amount awarded him by the district judge but only for $537.40 with legal interest thereon from August 3, 1920, until paid.

For these reasons, it is ordered that the judgment appealed from be amended so as to read as follows:

It is ordered, adjudged and decreed that there be judgment in favor of plaintiff, Foster & Glassell Co., Ltd., and against defendants, Knight Brothers, in the full sum of five hundred thirty-seven and 40-100 dollars together with legal interest thereon from August 3, 1920, until paid; defendants to pay all costs, except those of the present appeal which shall be paid by the plaintiff. And, as thus amended, the judgment appealed from is affirmed.