Archie **AULD**

v.

**GLOBE INDEMNITY COMPANY** and United States Casualty Company,

**LUDLOW CORPORATION** and Gates Rubber Company Sales Division, Inc., Third-parties Defendant.

Civ. A. No. 8663.

United States District Court
W. D. Louisiana,
Shreveport Division.

April 25, 1963.

William M. Shaw, Shaw & Shaw, Homer, La., for plaintiff.

Richard H. Switzer, Lunn, Irion, Switzer, Trichel & Johnson, Benjamin C. King, Cook, Clark, Egan, Yancey & King, Shreveport, La., for defendants.

Paul R. Mayer, Mayer & Smith, Malcolm E. Lafargue, Browne & Lafargue, Shreveport, La., Dayton Denious, Denver, Colo., for third-parties defendant.

BEN C. DAWKINS, Jr., Chief Judge.

### RULING ON PENDING MOTIONS

While working at the plant of his employer, Ludlow Corporation, located at Homer, Louisiana, Archie Auld was injured by the rupture of a high-pressure steam-water hose which was part of a newly installed film casting machine.

He instituted suit in the State Court against the insurers of Frank W. Egan & Co., the manufacturer of the machine, and Perfecting Service Company, who allegedly supplied the hose to Egan, for the injuries he had sustained. Workmen's compensation payments were made to Auld by the insurer of Ludlow.

The defendants in that suit timely removed it to this Court. Third-party complaints then were filed by them (Globe Indemnity Company, as the insurer of Egan, and United States Casualty Company, the insurer of Perfecting) against Gates Rubber Company, the alleged manufacturer of the high-pressure hose, and against Ludlow. Auld, Ludlow and Gates have moved to dismiss the third-party complaints for failure to state claims upon which relief can be granted.

The motion by Gates is not well founded. As to it, the third-party complaints are based upon the premise that failure of the hose resulted from its faulty construction or fabrication. Plaintiff's complaint alleges that Perfecting sold the hose representing that it would withstand the heat and pressure of the process. Since the occurrence of the accident could be attributed to furnishing a faulty hose failing to meet specifications, it is possible that liability for the accident may be found against Gates. Appalachian Corporation v. Brooklyn Cooperage Co., 151 La. 41, 91 So. 539 (1922); Walker v. General Motors Corp. (W.D.La., 1953), 115 F.Supp. 267. Accordingly, the motion to dismiss by Gates must be and is denied. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Ludlow's motion presents a more difficult question. In considering the motion, every set of facts which third-party plaintiffs might prove must be examined to determine whether they state a claim with a legal basis. Conley v. Gibson, supra.

First, there was no written contract of indemnity between Ludlow and the firms insured by third-party plaintiffs as in Travelers Insurance Company v. Busy Electric Co., 294 F.2d 139 (5 Cir., 1961). Another possible theory upon which third-party plaintiffs might proceed is for non-contractual indemnity as enunciated in Appalachian Corporation v. Brooklyn Cooperage Co., supra. That decision established an exception to the then Louisiana law that no contribution could be demanded among joint tort-feasors unless they were cast in judgment *in solido*.[1] This doctrine, as tersely stated in Northwestern Mutual Fire Association v. Allain, 226 La. 788, 77 So. 2d 395, 49 A.L.R.2d 362 (1954), is that a joint tort-feasor who was only technically or constructively at fault could

1. But see Fn. 4, infra.

recover full indemnity from the other tort-feasor who actually was at fault. Application of the doctrine has been limited in Louisiana to those who, without actual fault on their part, might be vicariously liable such as a landowner for failure to keep his premises in good repair,[2] a parent for the tort of his child,[3] an employer for the tort of his employee,[4] or because of some contractual relationship.[5]

In 2 Larson, Workmen's Compensation, § 76.43, this obligation, from which the right to indemnity may arise in favor of third persons, is characterized as a separate implied obligation to them to use due care. Of particular significance is the discussion distinguishing situations where there was a separate implied obligation in favor of third parties to use due care and those where no such obligation was present. Reference is made to American Mutual Liability Insurance Co. v. Matthews, 182 F.2d 322 (2 Cir., 1950), where a shipowner claimed contribution from the employer of a stevedore who had obtained judgment against the shipowner for injuries sustained in an accident resulting from the failure of a defective rope furnished by the shipowner. The Court found that there was no duty on the part of the employer not to use the equipment provided, nor was there a duty on his part to the shipowner to inspect the equipment so furnished. It was held that these duties were owed by the employer to the employee, not to the furnisher of the equipment. The Court said, in part:

"* * * In the case at bar no promise by the employer can be implied that he will not use equipment furnished him by the shipowner to be used for the very purpose to which it was put. Nor can a promise be implied that he will use care to detect any defect in the equipment which patently existed when the equipment was delivered for use by the employer. To imply such a promise would mean that the employer agreed to protect the shipowner against liability arising out of the shipowner's own negligence. In the absence of an express promise, such an implication would be utterly unreasonable. Hence we find no contractual basis for indemnity or contribution. To impose a non-contractual duty of contribution on the employer is *pro tanto* to deprive him of the immunity which the statute grants him in exchange for his absolute, though limited, liability to secure compensation to his employees.

"* * * In the case at bar the stevedoring firm never owed the shipowner a duty to discover defects in equipment which the shipowner furnished for its use in loading the ship. Its duty to discover patent defects in such equipment was owed only to its employees and that duty the Longshoremen's Act abolished, substituting therefor an absolute duty to pay compensation. * * *"

■ We think the rationale of that case is quite applicable to the facts presented here. If the injury to Auld, as he alleges, was caused by the failure of the hose due to its alleged defectiveness, there is no recourse for indemnity against Ludlow, which had no duty to

2. Appalachian Corp. v. Brooklyn Cooperage Co., 151 La. 41, 91 So. 539 (1922).

3. Sutton v. Champagne, 141 La. 469, 75 So. 209 (1917).

4. Williams v. Marionneaux, 240 La. 713, 124 So.2d 919, at 923 (1960). Cf. Marquette Casualty Co. v. Brown, 235 La. 245, 103 So.2d 269 (1958). Additionally, the Louisiana Supreme Court indicated that the finding in the Appalachian case, supra, that contribution was due was not accurate. The Court in Marquette distinguished indemnity and contribution, thus making it mandatory that these be considered separately as possible routes of recovery for the plaintiffs.

5. American Employers Ins. Co. v. Gulf States Utilities Co., 4 So.2d 628 (La. App., 1941). The Court found that the relationship of the supplier of a stove to the contractor who installed the stove was similar to that of an employer to an employee.

anyone other than Auld and its other employees to test the hose or otherwise use care in installing or operating the machine.

Likewise, we find that third-party plaintiffs' specific allegations of negligence on Ludlow's part fall into the same category. They claim that Ludlow was negligent

(a) In improperly installing said hose on the film casting machine.

(b) In improperly testing said hose and machinery.

(c) In subjecting said hose to greater pressure and higher temperatures than it was intended to withstand.

(d) In using rubber hose for steam or temperature applications when said hose was designed for cooling purposes.

If Ludlow was guilty of negligence in any of these, or any other, respects, it breached no implied duty of care owed to Egan or Perfecting, but only to Auld and its other employees at the plant, for which breach its exclusive liability would be under the Louisiana Workmen's Compensation Law. Moreover, if such breach was the sole proximate cause of the accident, the insurers of Egan and Perfecting would not be liable in tort to Auld. We can conceive of no set of facts which might be proven in this case under which they, as insurers of Egan and Perfecting, might be held vicariously liable to him, except possibly insofar as Gates is concerned. They may be held either directly liable to Auld, in the absence of a finding of negligence on Ludlow's part; or, if Ludlow was jointly negligent with Egan and Perfecting, then they may be held liable as joint tort-feasors. For these reasons we find that Ludlow, under any circumstances occurring at the plant, may not be held liable to the insurers of Egan or Perfecting for indemnity.

The final legal theory upon which third-party plaintiffs might proceed against Ludlow is that for contribution between joint tort-feasors. Prior to the 1960 amendment by the Legislature of Article 2103 of the LSA–Civil Code, contribution could be demanded only if the joint tort-feasors were cast *in solido*. Kahn v. Urania Lumber Co., La.App., 103 So.2d 476 (1958). This rule now provides:

"Art. 2103. When two or more debtors are liable in solido, whether the obligation arises from a contract, a quasi contract, an offense, or a quasi offense, it should be divided between them. As between the solidary debtors, each is liable only for his virile portion of the obligation.

"A defendant who is sued on an obligation which, if it exists, is solidary may seek to enforce contribution, if he is cast, against his solidary co-debtor by making him a third party defendant in the suit, as provided in Article 1111 through 1116 of the Code of Civil Procedure, whether or not the third party defendant was sued by the plaintiff initially, and whether the defendant seeking to enforce contribution if he is cast admits or denies liability on the obligation sued on by the plaintiff. (As amended Acts 1960, No. 30, § 1.)"

Ludlow, however, contends that contribution cannot be demanded from it since, as the employer of Auld, its liability is limited solely to Workmen's Compensation. The exemption language of the Workmen's Compensation Statute, LSA–R.S. 23:1032, in pertinent part, provides:

"§ *1032. Exclusiveness of rights and remedies; employer's liability to prosecution under other laws*

"The rights and remedies herein granted to an employee or his dependent on account of a personal injury for which he is entitled to compensation under this Chapter shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations."

Third-party plaintiffs, on the other hand, maintain that this language in the Louisiana Workmen's Compensation Act is limited to exemption of the employer from tort liability to the employee only and, therefore, provides no protection against their demands against Ludlow for contribution as a joint tort-feasor. This problem was before this Court once before in Robinson v. National Automobile & Casualty Ins. Co., D.C., 75 F.Supp. 489 (1948). In that case, a motion to dismiss filed by the third-party employer-defendant was denied. In its reasons for denial, the Court, while finding that *the employer would not be liable in* tort as a matter of law, decided that recovery could be had by the employee against the original defendant ·(third-party plaintiff) only to the extent of its virile portion of the entire liability. While we are in accord with the equitable principles contained in Robinson, a later decision by the United States Supreme Court in Halcyon Lines v. Haenn Ship Corporation, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952), has disapproved a similar construction of the Longshoremen's and Harbor Workers' Compensation Act, the exemption provisions of which are substantially similar to those of the Louisiana Workmen's Compensation Act. The Court said, 342 U.S. at page 285, 72 S.Ct. at page 279:

"We have concluded that it would be unwise to attempt to fashion new judicial rules of contribution and that the solution of this problem should await congressional action. Congress has already enacted much legislation in the area of maritime personal injuries. For example, under the Harbor Workers' Act Congress has made fault unimportant in determining the employer's responsibility to his employee; Congress has made further inroads on traditional court law by abolition of the defenses of contributory negligence and assumption of risk and by the creation of a statutory schedule of compensation. The Harbor Workers' Act in turn must be integrated with other acts such as the Jones Act (41 Stat. 1007, 46 U.S.C. § 688), the Public Vessels Act (43 Stat. 1112, 46 U.S.C. §§ 781–790), the Limited Liability Act (R.S. § 4281, as amended, 46 U.S.C. § 181 et seq.) and the Harter Act (27 Stat. 445, 46 U.S.C. §§ 190–195). Many groups of persons with varying interests are vitally concerned with the proper functioning and administration of all these Acts as an integrated whole. We think that legislative consideration and action can best bring about a fair accommodation of the diverse but related interests of these groups. The legislative process is peculiarly adapted to determine which of the many possible solutions to this problem would be most beneficial in the long run. A legislative inquiry might show that neither carriers, shippers, employees, nor casualty insurance companies desire such a change to be made. The record before us is silent as to the wishes of employees, carriers, and shippers; it only shows that the Halcyon Line is in favor of such a change in order to relieve itself of a part of its burden in this particular lawsuit. Apparently insurance companies are opposed to such a change. Should a legislative inquiry convince Congress that a right to contribution among joint tortfeasors is desirable, there would still be much doubt as to whether application of the rule or the amount of contribution should be limited by the Harbor Workers' Act, or should be based on an equal division of damages, or should be relatively apportioned in accordance with the degree of fault of the parties.

"In view of the foregoing, and because Congress while acting in the field has stopped short of approving the rule of contribution here urged, we think it would be inappropriate for us to do so. The judgments of the Court of Appeals are reversed and the cause is remanded to the Dis-

trict Court with instructions to dismiss the contribution proceedings against Haenn."

We must agree that the problem of whether additional remedies should be given, such as the right to contribution here claimed, is peculiarly a legislative one. In this type of case, if contribution is to be allowed, the decision should be made by the Louisiana Legislature. See 2 Larson, Workmen's Compensation Law, § 76.53. While we are convinced that the reasoning and ruling in Halcyon impliedly overruled the holding in Robinson, such is not, however, the complete answer to the claims for contribution here.

 As noted above, this State's Legislature has amended the Civil Code Article dealing with contribution, and the solution must be sought in the Civilian tradition, but it cannot be found in legislative action thus far taken. Article 2103 now provides that a defendant may seek contribution from another or others where an obligation *is solidary.* In Louisiana an obligation *in solido,* as defined in Article 2091 of the LSA–Civil Code, is as follows:

> "There is an obligation *in solido* on the part of the debtors, when they are all obliged to the same thing, so that each may be compelled for the whole, and when the payment which is made by one of them, exonerates the others toward the creditor."

The Louisiana Workmen's Compensation Statute exempts the employer from any duty to pay any tort damages for his negligence committed against his employee. His sole obligation is an absolute duty to pay Workmen's Compensation whether there was any fault on his part or not. See, e. g., Dandridge v. Fidelity and Casualty Co. of New York, 192 So. 887 (La.App., 1939). The

right of contribution can exist only where the joint torts have imposed a common, solidary liability upon the joint tort-feasors to the injured party. Here there can be no solidary liability between the employer, Ludlow, and the third-party plaintiffs to Auld, and, therefore, the insurers of Egan and Perfecting have no right to contribution from Ludlow.[6]

Consequently, for the reasons given, Ludlow's motion to dismiss the third-party complaints against it, for failure to state a claim upon which relief may be granted, must be and it is hereby sustained.

---

6. Although many of the common law cases base their result of denying contribution on the basis that the statute in question sets forth clearly that this liability is to be exclusive against all parties, they are in accord with the reasoning above. See American Mutual Liability Ins. Co. v. Matthews, 182 F.2d 322 (2 Cir., 1950), and authorities cited in Footnote 1 therein, 182 F.2d at 323.