**CUSHING et al. v. MARYLAND CAS. CO. et al.**

No. 13887.

United States Court of Appeals
Fifth Circuit.

July 31, 1952.

Rehearing Denied Oct. 9, 1952.

See 198 F.2d 1021.

James J. Morrison, Arthur A. de la Houssaye, Raymond H. Kierr, Gerard A. Rault, New Orleans, La., for appellants.

Eberhard P. Deutsch, Brunswick G. Deutsch, New Orleans, La., for appellees.

Before HOLMES, STRUM, and RIVES, Circuit Judges.

STRUM, Circuit Judge.

This appeal is from a summary judgment dismissing, as to the insurers involved, five consolidated actions at law brought to recover damages for the death of five seamen who drowned when the tug boat "Jane Smith" collided with a bridge, capsized and sank in navigable waters within the admiralty jurisdiction in Louisiana. Federal jurisdiction is asserted both under Sec. 33 of the Merchant Marine (Jones) Act of 1920, 46 U.S.C.A. § 688, and upon diversity of citizenship.

The suits are against Texas & Pacific Railway Company, owner of the bridge, and Maryland Casualty Company and Home Insurance Company, who are the liability insurance underwriters of the owner and charterer of the tug, insuring against loss of life by, or personal injury to, the crew of said vessel. The complaints allege that the deaths were due to the negligence of the bridge owner, and of the owner and charterer of the tug.

Plaintiffs assert the right to directly sue the insurers under Louisiana's "direct action" statute, Title 22, Sec. 655, La.Rev.Stat. 1950, LSA–R.S. 22:655, which provides in part: "The injured person or his or her heirs, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy, * * * and said action may be brought against the insurer alone or against both the insured and the insurer, jointly * * *." The policies involved were issued and delivered in Louisiana.

The dominant question is whether or not the statute applies to policies which protect the owner and charterer of a vessel against liability for personal injuries or accidental death suffered by the crew of a vessel in navigable waters. The district judge answered the question negatively. He was of the view that Sec. 655, supra, which relates to "liability" insurance, is confined to the ordinary type of liability insurance as defined in Title 22, Sec. 6(4), La.Rev. Stat.1950, LSA–R.S. 22:6(4), and does not extend to "Marine protection and indemnity insurance," as defined in subd. (13) (e) of that title, which is the type of policy here sued upon. He was further of the view that to give effect to the direct action statute as to these policies would be an invasion of the field of exclusive federal jurisdiction over admiralty and maritime matters which would not only impair the characteristic features of general maritime law, but would contravene the essential purpose of limitation of liability proceedings in admiralty, under 46 U.S.C.A. § 183, which have been instituted by this owner and charterer, and in which these plaintiffs have filed claims. As one of the policies also provides hull insurance, the district judge was further of the view that to the extent of plaintiffs' recovery in the limitation proceedings, the owner would be compelled to surrender insurance money to the claimants therein, contrary to the rule established in Norwich & N. Y. Transp. Co. v. Wright, 13 Wall. 104, 80 U.S. 104, 20 L.Ed. 585, and in City of Norwich, 118 U.S. 468, 6 S.Ct. 1150, 30 L.Ed. 134, that an owner's liability is confined to the value

of the vessel after the damage, not before, and that insurance money belongs to the owner, not to the claimants.[1]

It appears to us that in enacting Sec. 655, supra, the Louisiana legislature used the term "liability insurance," in its broad generic sense, meaning that form of insurance by which an insured is indemnified against liability on account of bodily injuries sustained by others. The statute is not limited to the one type of liability insurance defined in Sec. 6(4), Title 22, supra, but extends as well to marine liability insurance of the type here involved. The statute is remedial.[2] It should be liberally construed to accomplish its obvious purpose, which is to afford an injured person a direct action against a compensated insurer who has assumed ultimate liability. There is no indication in Sec. 655 that the Louisiana legislature intended to deny the right of direct action to persons covered by marine policies, while extending it to all others. On the contrary, it appears to us that it was intended, so far as the state legislative powers are effective, to extend the right to all persons covered by what is broadly known as "liability insurance," including policies of the type here in question. While the policies sued on cover marine activities, fundamentally they are ordinary contracts of indemnity insurance.

Title 28 U.S.C.A. § 1333, a part of the original Judiciary Act of 1789, provides that United States district courts shall have original jurisdiction, exclusive of the courts of the states, of any civil case of admiralty or maritime jurisdiction, "saving to suitors in all cases all other remedies to which they are otherwise entitled." Applying this clause in upholding the validity of the New York Arbitration statute as applied to a dispute under a charter party made and to be performed in that state, the United States Supreme Court said: "The 'right of a common-law remedy,' so saved to suitors, does not * * * include attempted changes by the states in the substantive admiralty law, but it does include all means other than proceedings in admiralty which may be employed to enforce the right or to redress the injury involved. * * * A state may not provide a remedy *in rem* for any cause of action within the admiralty jurisdiction. * * * But otherwise, the state, having concurrent jurisdiction, is free to adopt such remedies, and to attach to them such incidents, as it sees fit. * * * In no case has this court held void a state statute which neither modified the substantive maritime law, nor dealt with the remedies enforceable in admiralty." Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 123, 44 S.Ct. 274, 277, 68 L.Ed. 582, 586. These principles are determinative here.[3]

1. The district judge said [99 F.Supp. 683]: "If these plaintiffs should be paid any part of their claims in the limitation proceedings, then the shipowner under his contracts of insurance has a right to be reimbursed by his underwriters. If the underwriters' exposure on the policies is exhausted in paying the claims in this case, then the shipowner's right against his insurers will avail him nothing.

"The effect therefore of allowing these plaintiffs to proceed directly against the shipowner's insurers would be to force the owner to turn his insurance into the limitation proceeding as part of 'the interest of such owner in such vessel'. This the owner is not required to do. City of Norwich, 118 U.S. 468, 6 S.Ct. 1150, 30 L.Ed. 134."

2. Gager v. Teche Transf. Co., La.App., 143 So. 62; Hudson v. Georgia Cas. Co., D. C., 57 F.2d 757.

3. See also Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210, and Great Lakes D. & D. Co. v. Kierejewski, 261 U.S. 479, 43 S.Ct. 418, 67 L.Ed. 756, holding that although admiralty affords no relief for wrongful death under general maritime law, an action *in personam* may be maintained in admiralty under a state "wrongful death" statute to recover for a death upon navigable waters as a result of a maritime tort. (Statutory remedies for personal injuries or death suffered by a seaman, or for wrongful death on the high seas, are now provided by 46 U.S.C.A. §§ 688, 761). Also, see Jarka Corp. v. Hellenic Lines, 2 Cir., 182 F.2d 916, 919, holding general New York law applicable to a stevedoring contract, which is a maritime contract. What was said as to "uniformity" in Southern Pac. Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, has been sharply limited by Standard Dredg-

■ While Sec. 655, supra, confers upon an injured party a substantive right which becomes vested at the moment of the injury,[4] it is not a right essentially maritime in character, nor one peculiar to admiralty or maritime jurisdiction, but is one which applies alike to all contracts of public liability insurance, regardless of whether the injury occurs ashore or afloat. There is nothing in it which undertakes to change the substantive admiralty law, nor does it undertake to deal with a remedy in courts of admiralty. The statute provides only an additional and cumulative remedy at law in the enforcement of obligations of indemnity voluntarily and lawfully assumed by the insurer. Thus the statute does not conflict with any feature of substantive admiralty law, nor with any remedy peculiar to admiralty jurisdiction. These suits are at law, not in admiralty.

■ Appellees, the insurers, further contend that the Jones Act, 46 U.S.C.A. § 688, creates a right of action against an injured seaman's employer, but not against the employer's liability underwriter, and that the State of Louisiana can not add to the rights created by the Jones Act. It is unnecessary, however, to determine that question. Even if there were no jurisdiction, nor any right of action, under the Jones Act, which we do not decide, diversity of citizenship exists between all plaintiffs and the defendant insurers, and more than $3,000.00 is involved in each suit. These circumstances support federal jurisdiction. The complaints contain averments which sufficiently assert liability upon general principles of negligence, and also for accidental death within the coverage of the policies sued upon, so that a cause of action is stated.

■ Appellees' contentions over-inflate a relatively simple proposition with apparent, but unreal, technical problems. Stripped of illusory technicalities, the Louisiana statute merely creates in favor of one who has been wrongfully injured, an additional and cumulative remedy *at law* against an insurer who has agreed to indemnify the *tort-feasor* against liability, by subrogating the injured person to all the rights of the insured within the terms and limits of the policy. Other existing remedies are not in the least impaired or affected. New Amsterdam Cas. Co. v. Soileau, 5 Cir., 167 F.2d 767, 6 A.L.R.2d 128. Such contracts of insurance are for the benefit of the public, as well as of the insured employer. Davies v. Consolidated Underwriters, 199 La. 459, 6 So.2d 351; West v. Monroe Bakery, Inc., 217 La. 189, 46 So.2d 122. The statute is simply a regulation by the state of insurance companies doing business within its boundaries, for which there is ample sanction in federal law. 15 U.S.C.A. §§ 1011, 1012, the McCarran Act.[5] The limitation of liability statutes, 46 U.S.C.A. § 183 et seq., relate, not to "the business of insurance" as mentioned in the McCarran Act, but to the liability of shipowners. The object of that proceeding is to limit the liability of the owner, not to preclude injured persons from pursuing any remedy open to them against others. To permit such an action will not defeat the purpose of the federal limitation of liability statute, nor will it interfere with the harmony or uniformity of admiralty law in its international or interstate relations. That the remedy may not exist in states other than Louisiana is not a tenable objection. The same was true in Red Cross

ing Corp. v. Murphy, 319 U.S. 306, 63 S.Ct. 1037, 87 L.Ed. 1416.

4. Fisher v. Home Indemnity Co., 5 Cir., 198 F.2d 218; New Amsterdam Cas. Co. v. Soileau, 5 Cir., 167 F.2d 767, 6 A.L.R. 2d 128; Belanger v. Great American Indemn. Co., D.C.La., 89 F.Supp. 736; West v. Monroe Bakery, Inc., 217 La. 189, 46 So.2d 122.

5. "Congress declares that the continued regulation * * * by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation * * * of such business by the several states." 15 U.S.C.A. § 1011.

"No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance * * * unless such Act specifically relates to the business of insurance". 15 U.S.C.A. § 1012(b).

Line v. Atlantic Fruit Co., supra, involving the New York Arbitration statute.

The Louisiana statute is wholly a regulation of the liability of insurers doing business in Louisiana upon obligations voluntarily assumed by them there. We see no reason why it should not be applied to liability policies such as those here sued upon, even though the injuries were suffered upon navigable waters. Federal jurisdiction exists, and the complaints state a cause of action.

Reversed and remanded.