UNITED STATES *v.* LOUISIANA ET AL.

No. 9, Original. Decided May 31, 1960.—Final Decree Entered
December 12, 1960.—Supplemental Decree Entered
December 13, 1965.

*Solicitor General Marshall* for the United States.

*Jack P. F. Gremillion,* Attorney General of Louisiana, *John L. Madden,* Assistant Attorney General, *Paul M. Hebert, Victor A. Sachse, Thomas W. Leigh, Oliver P. Stockwell* and *J. J. Davidson* for the State of Louisiana.

Supplemental Decree.

For the purpose of giving effect to the conclusions of this Court as stated in its opinion, announced May 31, 1960, and the decree entered by this Court on December 12, 1960, it is ordered, adjudged and decreed as follows:

1. As against the defendant State of Louisiana, the United States is entitled to all the lands, minerals and other natural resources underlying the Gulf of Mexico, south of grid line $y=499,394.40$ on the Louisiana Plane Coordinate System, South Zone, that are more than three geographical miles seaward from a line described as follows (coordinates refer to the Louisiana Plane Coordinate System, South Zone):

Beginning at the point where grid line $y=499,$-$394.40$ intersects the line of mean low water on the eastern side of Chandeleur Island, thence southerly along the line of mean low water on the eastern side of the Chandeleur Islands, and by straight lines across channels between the islands, to the south-westernmost extremity of Errol Shoal, at latitude

29°35'48" N., longitude 89°00'48" W. (x=2,737,-287.96, y=345,654.41); thence to Pass a Loutre lighted whistle buoy 4, at latitude 29°09'55.9" N., longitude 88°56'54.4" W. (x=2,761,169.19, y= 189,334.14); thence to South Pass lighted whistle buoy 2, at latitude 28°58'44.9" N., longitude 89°06'36.9" W. (x=2,710,848.37, y=120,529.25); thence to Southwest Pass entrance mid-channel lighted whistle buoy, at latitude 28°52'37.1" N., longitude 89°25'57.1" W. (x=2,608,424.04, y= 81,526.86); thence to Ship Shoal lighthouse at latitude 28°54'51.512" N., longitude 91°04'15.985" W. (x=2,083,908.09, y=90,154.12); thence to Calcasieu Pass lighted whistle buoy 1, at latitude 29°36'21.7" N., longitude 93°19'07.6" W. (x=1,369,080.08, y= 347,060.52); thence to Sabine Pass lighted whistle buoy 1, at latitude 29°36'16" N., longitude 93°48'-31.2" W. (x=1,213,416.18, y=349,514.72).

2. The State of Louisiana is not entitled to any interest in the lands, minerals or resources described in paragraph 1 hereof, and said State, its privies, assigns, lessees and other persons claiming under it are hereby enjoined from interfering with the rights of the United States in such lands, minerals and resources.

3. With the exceptions provided by § 5 of the Submerged Lands Act, 67 Stat. 32, 43 U. S. C. § 1313 (1964 ed.), the State of Louisiana is entitled, as against the United States, to all the lands, minerals and other natural resources in the portions of the disputed area described in this paragraph. These portions of the disputed area are bounded on the landward side by the seaward boundary of Zone 1, as delineated on Exhibit A to the parties' Interim Agreement of October 12, 1956, as amended, on file with the Court. They are bounded on the seaward side by lines three geographical miles seaward from baselines as herein described, consisting of (1) segments of, or

salient points on, the line of mean low water on the mainland, on naturally formed islands, or on naturally formed low-tide elevations situated wholly or partly within three geographical miles from the low-water line on the mainland or on such islands, and (2) straight lines across designated openings in the low-water line. As used herein, "salient point" means any point on the low-water line, so situated that there is some area within three geographical miles seaward from such point that is more than three geographical miles from all other points on the baseline. These baselines are ambulatory and subject to continual modification by natural or artificial changes in the shore line to the extent the law may provide, but for purposes of present identification and practical administration until notice by either party to the other they are described herein by their coordinates in the Louisiana Plane Coordinate System, South Zone, as shown by Exhibits 1 to 4, inclusive, filed with the Motion of the United States herein. Each three-mile line is to be drawn in such manner that every point on the three-mile line is exactly three geographical miles from the nearest point or points on the baseline, continuing in each direction until it meets another specified boundary of the particular portion of the disputed area. The portions of the disputed area referred to herein are as follows:

(a) In the vicinity of Calcasieu Pass, all that portion of the disputed area bounded on the landward side by the seaward boundary of Zone 1, and bounded on the seaward side by a line three geographical miles seaward from the tip of the western jetty, at x=1,362,416, y=397,822; from the tip of the eastern jetty, at x=1,363,392, y=397,870; and from a straight line between said points.

(b) In the vicinity of Marsh Island and Atchafalaya Bay, all that portion of the disputed area

bounded on the landward side by the seaward boundary of Zone 1, and bounded on the seaward side by a line three geographical miles seaward from salient points on islands and low-tide elevations at x=1,778,769, y=324,757; x=1,782,391, y=321,876; x=1,783,067, y=321,331; x=1,791,584, y=307,545; x=1,809,845, y=296,285; x=1,820,994, y=291,804; x=1,833,527, y=271,423; x=1,834,019, y=270,-301; x=1,835,344, y=270,839; x=1,843,467, y=275,912; x=1,844,320, y=278,858; x=1,875,200, y=285,729; and x=1,877,582, y=283,274; three geographical miles seaward from a straight line between South Point, Marsh Island, at x=1,863,474, y=298,772, and Point Au Fer, at x=1,993,420, y=241,930; and three geographical miles seaward from a salient point on a low-tide elevation at x=1,987,371, y=241,272.

(c) In East Bay, all that portion of the disputed area bounded on the landward side by the seaward boundary of Zone 1, and bounded on the seaward side by a line three geographical miles seaward from salient points on the mean low-water line at x=2,639,545, y=126,825; x=2,641,835, y=129,725; and x=2,644,940, y=134,910, and from the line of mean low water which may be considered to consist of straight lines between said points; three geographical miles seaward from a salient point on a low-tide elevation at x=2,672,315, y=141,745; three geographical miles seaward from the line of mean low water which may be considered to consist of straight lines between the points x=2,673,-482, y=141,245; x=2,678,500, y=139,250; and x=2,682,605, y=136,895; and three geographical miles seaward from a salient point on the mean low-water line at x=2,685,325, y=133,800.

(d) Between Pass a Loutre and Breton Island, all that portion of the disputed area west of grid line x=2,740,710, bounded on the landward side by the seaward boundary of Zone 1, and bounded on the seaward side by a line three geographical miles seaward from salient points on the mainland, on islands, or on low-tide elevations at x=2,738,320, y=210,230; x=2,737,065, y=210,155; x=2,727,090, y=209,195; x=2,709,100, y=220,995; x=2,708,835, y=221,440; x=2,707,635, y=223,640; x=2,701,500, y=232,820; x=2,700,735, y=234,640; x=2,689,305, y=250,395; and x=2,688,235, y=252,215; and three geographical miles seaward from a straight line between the eastern headland of Main Pass, at x= 2,681,915, y=257,755, and the southern extremity of Breton Island, at x=2,678,009, y=294,303.

4. The United States is not entitled, as against the State of Louisiana, to any interest in the lands, minerals or resources described in paragraph 3 hereof, with the exceptions provided by § 5 of the Submerged Lands Act, 43 U. S. C. § 1313.

5. All sums now held impounded by the United States under the Interim Agreement of October 12, 1956, as amended, derived from or attributable to the lands, minerals or resources described in paragraph 1 hereof are hereby released to the United States absolutely, and the United States is hereby relieved of any obligation under said agreement to impound any sums hereafter received by it, derived from or attributable to said lands, minerals, or resources.

6. All sums now held impounded by the State of Louisiana under the Interim Agreement of October 12, 1956, as amended, derived from or attributable to the lands, minerals or resources described in paragraph 3 hereof are hereby released to the State of Louisiana

absolutely, and the State of Louisiana is hereby relieved of any obligation under said agreement to impound any sums hereafter received by it, derived from or attributable to said lands, minerals or resources.

7. Within 75 days after the entry of this decree—

(a) The State of Louisiana shall pay to the United States or other persons entitled thereto under the Interim Agreement of October 12, 1956, as amended, all sums, if any, now held impounded by the State of Louisiana under said agreement, derived from or attributable to the lands, minerals or resources described in paragraph 1 hereof;

(b) The State of Louisiana shall render to the United States and file with the Court a true, full, accurate and appropriate account of any and all other sums of money derived by the State of Louisiana since June 5, 1950, either by sale, leasing, licensing, exploitation or otherwise from or on account of any of the lands, minerals or resources described in paragraph 1 hereof;

(c) The United States shall pay to the State of Louisiana or other persons entitled thereto under the Interim Agreement, as amended, all sums, if any, now held impounded by the United States under said agreement, derived from or attributable to the lands, minerals or resources described in paragraph 3 hereof;

(d) The United States shall render to the State of Louisiana and file with the Court a true, full, accurate and appropriate account of any and all other sums of money derived by the United States either by sale, leasing, licensing, exploitation or otherwise from or on account of the lands, minerals or resources described in paragraph 3 hereof.

8. Within 60 days after receiving the account provided for by paragraph 7 (b) or 7 (d) hereof, a party may serve on the other and file with the Court its objections thereto. Thereafter either party may file such motion or motions at such time as may be appropriate to have the account settled in conjunction with the issues concerning the areas still in dispute. If neither party files such an objection within 60 days, then each party shall forthwith pay to any third person any amount shown by such accounts to be payable by it to such person, and the party whose obligation to the other party is shown by such accounts to be the greater shall forthwith pay to the other party the net balance so shown to be due. If objections are filed but any undisputed net balance is shown which will be due from one party to the other party or to any third person regardless of what may be the ultimate ruling on the objections, the party so shown to be under any such obligation shall forthwith pay each such undisputed balance to the other party or other person so shown to be entitled thereto. The payments directed by paragraphs 7 (a) and 7 (c) hereof shall be made irrespective of the accounting provided for by paragraphs 7 (b) and 7 (d).

9. Until further order of the Court or agreement of the parties filed with the Court, both parties shall continue to recognize as a single lease for all purposes any existing lease now being administered under the Interim Agreement of October 12, 1956, as amended, that covers lands, minerals, or resources, part of which are described in paragraph 1 or paragraph 3 hereof and part of which remain in dispute (including any existing leasehold partly in Zone 1 and partly within the area confirmed to the United States by this decree); but the party hereby awarded part of the lands, minerals, or resources covered by any such lease shall hereafter administer the lease

as to such lands, minerals, or resources as sole lessor, shall be entitled to receive from the lessee all payments hereafter due under said lease to the extent that they are derived from or attributable to such part of the lands, minerals, or resources covered by the lease, and shall be under no duty to account for or impound any payments so received. Either party, for its own convenience, may nevertheless impound any or all of such moneys if it wishes to do so, or may terminate such impoundment in whole or in part at any time, without further order of the Court or agreement of the other party. In all other respects each such lease (including any existing leasehold partly in Zone 1 and partly within the area confirmed to the United States by this decree) shall continue to be administered as at present.

10. Nothing in this supplemental decree or the proceedings leading to it shall prejudice any rights, claims or defenses of the United States or of the State of Louisiana with respect to the remainder of the disputed area or past or future payments derived therefrom or attributable thereto or the operation of the Interim Agreement of October 12, 1956, as amended, with respect to such area and payments.

11. The Court retains jurisdiction to entertain such further proceedings, enter such orders and issue such writs as may from time to time be deemed necessary or advisable to give proper force and effect to the decree of December 12, 1960, herein, or to this decree, including, if necessary, further adjustments of the accounting between the parties with respect to the lands, minerals and resources described in paragraph 1 and paragraph 3 of this decree.

THE CHIEF JUSTICE and MR. JUSTICE CLARK took no part in the consideration or decision of this motion or in the formulation of this decree.