**Jonie R. TAYLOR, Plaintiff,**

v.

**FISHING TOOLS, INC., et al., Defendants.**

**No. 7763.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Oct. 16, 1967.

Jack C. Benjamin, New Orleans, La., for plaintiff.

Edward de La Garza, New Orleans, La., for Humble Oil & Refining Co.

E. Burt Harris, Joe L. Horne, New Orleans, La., for Fishing Tools, Inc. and Humble Oil & Refining Co.

Joel L. Borrello, New Orleans, La., for Aetna Casualty & Surety Co.

RUBIN, District Judge:

Jonie R. Taylor, an employee of Mayronne Drilling Company (Mayronne), was injured while working on a fixed drilling platform located eight miles off the Louisiana coast. The platform belonged to Humble Oil & Refining Company (Humble) which had engaged Mayronne to drill a well from the platform. Fishing Tools, Inc. (Fishing Tools) had furnished some of the equipment to be used in drilling. Taylor sued Humble and Fishing Tools in admiralty under the general maritime law contending his injuries resulted from the negligence of Fishing Tools and Humble.

Aetna Casualty & Surety Company (Aetna) was the insurer of Mayronne under a policy written in Tampa, Florida, and delivered to Mayronne in New Orleans. Aetna intervened for recovery of compensation benefits paid to Taylor. Humble and Fishing Tools then cross-claimed against Aetna as the liability insurer of Mayronne. Mayronne was not made a party defendant to the cross claim.

Since Aetna's policy contains the usual "no-action" clause, it can be sued direct-

ly only if the Louisiana Direct Action Statute (LSA–R.S. 22:655) applies or if its joinder as an intervenor makes it subject to this cross claim. The questions raised bring a chain of interlocking problems into the case. These are separately discussed below.

## I. IS THE LOUISIANA DIRECT ACTION STATUTE APPLICABLE TO AN ACCIDENT ON AN OFFSHORE DRILLING PLATFORM?

A. *Does federal law make the Louisiana statute applicable?*

The Outer Continental Shelf Lands Act, 43 U.S.C.A. § 1333(a) (2), provides that:

> "To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State as of August 7, 1953 are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf * * *."

The Court of Appeals for the Fifth Circuit held in Pure Oil Company v. Snipes, 1961, 293 F.2d 60, that Louisiana tort law was not applicable to accidents occurring on offshore drilling platforms. This decision was recently reviewed and reaffirmed in Loffland Bros. Co. v. Roberts, 5 Cir., 1967. A similar result was reached in Ocean Drilling & Exploration Company v. Berry Bros., Inc., 5 Cir., 1967, 377 F.2d 511, in which the Court said in footnote 4:

> "[I]t is clear that federal maritime law, not that of Louisiana or any other

state, controls this controversy [over whether a repair contractor owed indemnity to the owner of a stationary offshore platform]."

 However, this does not necessarily dispose of the question here. For the direct action against Aetna is brought as a consequence of Louisiana insurance law, not Louisiana tort or compensation law.[1] Even if the Direct Action Statute is applied in this case, this action can be and should be governed by exactly the same federal principles with respect to liability and defenses that would be applied if the action had been brought against Mayronne. To permit the insurer to be joined in such an action does not create a situation "inconsistent with [the Outer Continental Shelf Lands Act] or with other Federal laws and regulations * * *." 43 U.S.C.A. § 1333 (a) (2). As the Fifth Circuit Court of Appeals observed in Cushing v. Maryland Casualty Company, 1952, 198 F.2d 536, 539:

> "While Sec. 665 * * * confers upon an injured party a substantive right which becomes vested at the moment of the injury, it is not a right essentially maritime in character, nor one peculiar to admiralty or maritime jurisdiction, but is one which applies alike to all contracts of public liability insurance, regardless of whether the injury occurs ashore or afloat. There is nothing in it which undertakes to change the substantive admiralty law, nor does it undertake to deal with a remedy in courts of admiralty. The statute provides only an additional and cumulative remedy at law in the enforcement of obligations of indemnity voluntarily and lawfully assumed by the insurer. Thus the statute does not conflict with any feature of substantive admiralty law, nor with any remedy peculiar to admiralty jurisdiction. These suits are at law, not in admiralty."

1. By adopting the McCarran-Ferguson Insurance Regulation Act, 15 U.S.C.A. § 1011 et seq., Congress has clearly shown that it intends state law to apply to reg- ulation of the insurance industry. See also Wilburn Boat Co. v. Fireman's Fund Insurance Co., 1955, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337.

\* \* \* \* \* \*

"To permit such an action will not defeat the purpose of the federal limitation of liability statute, nor will it interfere with the harmony or uniformity of admiralty law or its international or interstate relations."

Indeed it has been held that the insurer may be sued directly in actions based on the Jones Act and general maritime law. Lovless v. Employers' Liability Assurance Corp., 5 Cir., 1955, 218 F.2d 714; Cushing v. Maryland Casualty Company, 5 Cir., 1952, 198 F.2d 536, vacated in Maryland Casualty Company v. Cushing, 1954, 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806, involving a limitation proceeding; Alcoa SS Co. v. C. Ferran & Co., Inc., 5 Cir., 1967, 383 F.2d 46, involving a libel against a ship repair contractor and its underwriter for negligence in making repairs; and In re Independent Towing Co., E.D.La., 1965, 242 F.Supp. 950, 956, involving a limitation proceeding.

There is even more reason to apply the state insurance statute here. It permits adjudication of all of the claims resulting from a single event in one proceeding. Moreover, it enables the court which has jurisdiction of the basic action and which is most familiar with the substantive rules regarding recovery to deal with the related claims. Thus, application of the statute not only comes within the language of the Outer Continental Shelf Lands Act, but it is also consonant with sound practices of judicial economy and competence.[2]

B. *Is the Louisiana Direct Action Statute applicable according to its terms?*

1. *Effect of the Place Where the Accident Occurred.*

It is urged that the Louisiana Direct Action Statute, by its own terms, applies only if "the accident or injury occurred within the State of Louisiana." From a review of the history of the enactment of that phrase and the purposes of the statute, the Court concludes that the language of the statute does not prevent its application to an injury occurring outside of Louisiana on a platform erected upon the seabed of the Outer Continental Shelf.

Prior to 1950, the language of the Direct Action Statute was as follows:

"No policy or contract of liability insurance shall be issued or delivered in this state, unless it contains provisions to the effect that the insolvency or bankruptcy of the insured, shall not release the insurer from the payment of damages for injuries sustained or loss occasioned during the existence of the policy, and any judgment which may be rendered against the insured for which the insurer is liable which shall have become executory, shall be deemed prima facie evidence of the insolvency of the insured, and an action may thereafter be maintained within the terms and limits of the policy by the injured person or his or her heirs against the insurer. The injured person or his or her heirs, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy in the parish where the accident or injury occurred or in the parish where the insured has his domicile, and said action may be brought against the insurer alone or against both the insured and the insurer, jointly and in solido. Nothing contained in this section shall be construed to affect the provisions of the policy or contract if the same are not in violation of the laws of this state. It is the intent of this Section that any action brought

2. Applying the Louisiana statute in this case is also consistent with the rationale applied, and the results reached, in Corrosion Rectifying Company v. Freeport Sulphur Company, S.D.Tex., 1961, 197 F.Supp. 291. In that case the Court held that under the Outer Continental Shelf Lands Act, Louisiana law was applicable to the question of recovery of attorney's fees in an action to recover for repairs made by the plaintiff to the defendant's property, which was located on an artificial island lying off the Louisiana coast. The Court reasoned that since it found no conflict between application of 43 U.S.C.A. § 1333(2) and "other Federal laws," § 1333(2) "makes applicable Louisiana law \* \* \*." 197 F.Supp. at 293.

hereunder shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this state."

This was the text adopted by Act 195 of 1948.

A prior Louisiana statute, Act 55 of 1930, had been interpreted as applying to policies issued in Louisiana no matter where the accident occurred. Hudson v. Georgia Casualty Co., 1932, W.D.La., 57 F.2d 757, 759. It had likewise been interpreted as applying to policies issued and delivered in another state if the accident occurred in Louisiana. Stephenson v. List Laundry and Dry Cleaners, Inc., 1935, 182 La. 383, 162 So. 19. In 1950, Judge J. Skelly Wright held that in replacing Act 55 of 1930 with Act 195 of 1948 the legislature intended to limit the Direct Action Statute to policies issued in Louisiana. Belanger v. Great American Indemnity Company, E.D.La., 1950, 89 F.Supp. 736.[3] The Louisiana legislature convened shortly after the *Belanger* decision and amended the statute by Act 541 of 1950 so as to add the following sentence:

"This right of direct action shall exist whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the State of Louisiana."

It was generally thought that the purpose of this amendment was to overturn the result in *Belanger* and to make clear that the statute reached policies issued or delivered outside of Louisiana.[4]

However, the Louisiana legislature could not constitutionally make the statute apply to every insurance contract written and delivered anywhere and having no contact or point of reference with Louisiana. · It sought therefore to establish the essential constitutional basis for the statute's application by relating coverage to accidents occurring in Louisiana. The sentence inserted in the Direct Action Statute in 1950, then, was not intended to limit the scope of the statute; instead, historical perspective makes it clear that the purpose was to expand its coverage.

As Judge Rives has noted in his concurring opinion in Weingartner v. Fidelity Metal Ins. Co., 5 Cir., 1953, 205 F.2d 833, 834:

"The amendment to the Louisiana Direct Action Statute by Act No. 541 of the Acts of 1950 seems to me intended to meet the decision in the case of Belanger v. Great American Indemnity Company of New York * * *. That amendment, I think, was an effort to bring within the statute, so far as could be done, policies written outside the State of Louisiana * * *. I do not think that amendment was intended to affect policies written within the

3. Judge Wright also concluded that application of the Direct Action Statute to an out-of-state insurance policy would be unconstitutional if the policy contained a "no action" clause valid in the state where the policy was written. This latter conclusion of Judge Wright was rejected —at least as to accidents occurring in Louisiana—by the Supreme Court in Watson v. Employers Liability Assurance Corp., 1954, 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74.

4. "Acts 541 and 542 of 1950 appear to have been intended to accomplish a legislative overruling of the *Belanger* decision." Comment, The Louisiana Direct

Action Statute, 22 La.L.Rev. 243, 250 n. 32 (1961). "Act 541 was apparently designed to overrule that case (*Belanger*) by legislative act." Comment, Direct Actions—Insurance Contracts, 13 La.L. Rev. 495, 502 (1953). "Acts 541 and 542 are apparently designed to accomplish a legislative overruling of a recent case, Belanger v. Great American Indemnity Company of New York, holding that the right of direct action against the insurer authorized by Section 655 of Title 22 was limited to situations in which the policy of insurance had been issued and delivered in Louisiana." Louisiana Legislation of 1950, 11 La.L.Rev. 22, 51 (1950).

State of Louisiana, and the policy in this case was written in Louisiana.

"Nor do I think that under the two opinions cited in the Burke case, Burke v. Massachusetts Bonding & Inv. Co., La.App., 19 So.2d 647, affirmed 209 La. 495, 24 So.2d 875, the complaint in this case failed to state a claim upon which relief can be granted. According to the opinion of the Louisiana Supreme Court, 'It is conceded that Act [No.] 55 of 1930 is procedural and not substantive, * * *. But the statute merely gives a claimant a direct right of action against the liability insurer when he has a cause of action against the insured, or where the insured would be liable but for an immunity personal to him. * * * It only furnishes her with a method to enforce in Louisiana whatever rights she has in Mississippi.' 24 So.2d at page 877. What the Court held was that under the law of Mississippi a wife had no right or cause of action against her husband, the insured, for a tort committed against her. In the present case, I think the plaintiff would have had a cause or right of action against the insured under the law of Illinois where the accident occurred."

Thus, there is no reason to suppose that the legislature in 1950 intended to change the prior interpretation of the statute which made it applicable to injuries occurring outside the state when the policy had been issued in Louisiana. Nor is it reasonable to suppose that the legislature intended a different result as far as the application of the statute is concerned if the policy is delivered within the state rather than being issued here.

Let us suppose that the proviso concerning accidents happening in Louisiana had been omitted from the 1950 amendment. It could hardly be questioned that the Direct Action Statute would be ap-plicable here. Nor can it be doubted that the Louisiana statute could not constitutionally have provided, without Congressional authorization, that it would apply to artificial islands in the Gulf. The proviso adds nothing and takes away nothing that would otherwise have been part of the statute between 1950 and 1953, the date of enactment of the Outer Continental Shelf Lands Act. To limit the coverage of the Direct Action Statute to Louisiana's geographic boundaries is to make one rule applicable to maritime accidents on platforms in the coastal navigable waters within those boundaries and another rule applicable to platforms a short distance away, both otherwise subject to the same maritime rules. It would inject the controversy about what is Louisiana's geographic boundary [5] into this type of litigation. And it would frustrate the very uniformity sought to be achieved by the Outer Continental Shelf Lands Act on the one hand, and Pure Oil Company v. Snipes and Loffland Bros. Co. v. Roberts, supra, on the other.

■■■■ Application of the Direct Action Statute here merely gives "a method to enforce in [a federal court] in Louisiana whatever rights" [6] the cross-claimant has under the applicable maritime law. By its terms the Outer Continental Shelf Lands Act is intended to make Louisiana law applicable to the artificial islands in the Gulf of Mexico, just as if they were located in Louisiana. If we seek the Congressional purpose by whose star we are said to be guided, it clearly leads to the conclusion that the Louisiana statute is applicable here. And if we also look to the purpose of the Louisiana legislature we can have no real doubt that it too would have reached this result had it foreseen that it might constitutionally reach to the artificial islands in the gulf on which its citizens work and with which its economy is so directly linked.

5. See generally United States v. States of Louisiana, Texas, Mississippi, Alabama and Florida, 1960, 363 U.S. 1, 80 S.Ct. 961, 4 L.Ed.2d 1025. See also United States v. Louisiana, 1965, 382 U.S. 288, 86 S.Ct. 419, 15 L.Ed.2d 331.

6. Burke v. Massachusetts Bonding & Insurance Co., 1946, 209 La. 495, 24 So. 2d 875, 877.

The Court has been referred by counsel to the opinion of the Court of Appeals for the Fifth Circuit in Guess v. Read, 1961, 290 F.2d 622, 625, in which the Court of Appeals said:

"The Louisiana statute contains venue requirements that an action be brought in the parish where the accident or injury occurred or in the parish where the insured or insurer is domiciled. Thus is shown, we think, an intent on the part of the Louisiana Legislature that the accident or injury upon which a direct action may be maintained be one occurring within a parish of the State. The existence of federal jurisdiction over suits under the Louisiana statute does not change the effect to be given to the venue provisions of the Act in determining the legislative intent. We need not determine whether Louisiana could have authorized a claimant to bring a direct action against the tortfeasor's insurer where the accident or injury occurred outside of the State. It did not do so, and not having done so, we think the appellant here cannot maintained a direct action."

The Court likewise notes that those cases in which the Louisiana statute has been applied to maritime actions have all involved situations in which the accident occurred within the State of Louisiana [7] and that the Court in *Guess* distinguished the *Lovless* case on this basis.

With all deference, this Court must point out that the observations of the Fifth Circuit in Guess v. Read are merely dicta. The Court in *Guess* ultimately held that the Outer Continental Shelf Lands Act was not applicable to the accident there involved because the helicopter in which the plaintiff's husband was killed crashed into the sea and the accident did not happen on an artificial island in the gulf. Obviously, if the Outer Continental Shelf Lands Act was not applicable, Louisiana law could not be applied at sea no matter what its statutes said.

It is also respectfully submitted that the observations of the Fifth Circuit fail adequately to take into account the history surrounding, and the purpose of, the amendment to the Direct Action Statute made by the Louisiana Legislature in 1950.

Finally, the venue provisions of the Direct Action Statute do not seem to this Court to compel the conclusion that Louisiana did not intend the statute to apply extra-territorially if no constitutional problems were present. Even if the legislature intended the statute to be applied to accidents happening outside of the state, it had to make some provision for the venue of actions brought in Louisiana courts. Because a suit in a Louisiana court must be brought either in the parish where the accident occurred or in the parish where the insured or the insurer is domiciled does not suggest that the suit must result from an accident in Louisiana. Indeed in the *Hudson* case, supra, Judge Dawkins, a former member of the Louisiana Supreme Court, concluded that the Direct Action Statute was applicable to an out-of-state accident notwithstanding the fact that the statute as it then read contained venue provisions substantially identical to those in the present statute. It thus seems to this Court that the venue provisions do not indicate a desire on the part of the legislature to limit application of the statute to accidents occurring in Louisiana. "The more reasonable view * * * appears to be that these are but requirements of place of suit which do not carry beyond the limits of a Louisiana forum." Collins v. American Automobile Insurance Co., 1956, 2 Cir., 1956, 230 F.2d 416, 423 (Clark, C. J.). Therefore, I conclude that the language of the statute itself does not bar its application to claims arising from accidents otherwise cognizable under the Outer Continental Shelf Lands Act.

7. See, e. g., Alcoa SS Co. v. C. Ferran & Co., Inc., 5 Cir., 1967, 383 F.2d 46; Lovless v. Employers' Liability Assurance Corp., 5 Cir., 1955, 218 F.2d 714; Cushing v. Maryland Casualty Company, 5 Cir., 1952, 198 F.2d 536; In Re Independent Towing Co., E.D.La., 1965, 242 F.Supp. 950.

## 2. *Effect of the Nature of the Claim.*

■ But the Direct Action Statute does not apply to all claims of any nature whatever just because an insurer is a defendant. The precise terms of the statute grant a right of direct action only to the "injured person or his * * * survivors or heirs * * *." The Louisiana Court of Appeal for the Fourth Circuit has held that the "injured person" accorded a right of direct action is a "person injured as a result of tortious conduct and not one injured as a result of breach of contract." Pennsylvania Fire Ins. Co. v. Underwriters at Lloyd's, La. App. 4 Cir., 1962, 140 So.2d 212, 215. This result is in accordance with the statement of the Louisiana Supreme Court in Tyler v. Walt, 1936, 184 La. 659, 167 So. 182, 184, in which the Court said with reference to the purpose of the statute:

> "That statute applies to accidents and damages for the injuries sustained or the losses occasioned thereby; and the purpose of the act was to impose liability on the casualty insurer in case of the insolvency or bankruptcy of the insured *tort-feasor.*" (Emphasis supplied.)

■ Since the Louisiana statute applies only to tort claims and not to claims for breach of contract, we must look to the nature of the claims asserted here to see if the statute applies. These claims are as follows:

a. Humble's claims:

(1) Mayronne violated the indemnity agreement in its contract with Humble and hence is liable. The *Pennsylvania Fire Insurance Company* case establishes that a direct action will not lie on this claim.

(2) The injuries "were caused by the primary, (sic) and active and sole negligence" of Mayronne and therefore Humble is entitled to indemnity from Mayronne. This is not a claim that Mayronne is a joint tortfeasor and owes contribution,[8] but appears to be predicated only on principles of indemnity. See, e. g., Appalachian Corporation v. Brooklyn Cooperage Co., 1922, 151 La. 41, 91 So. 539; United Gas Corporation v. Guillory, 5 Cir., 1953, 206 F.2d 49, 53; Locicero v. Freeport Nickel Company, E.D.La., 1965, 243 F.Supp. 828.

■ Such a claim for indemnity is based on quasi-contract. Appalachian Corporation v. Brooklyn Cooperage Co., 1922, 151 La. 41, 91 So. 539; 42 C.J.S. Indemnity § 21, p. 596 ("[A]n implied contract of indemnity arises in favor of a person who without any fault on his part is exposed to liability and compelled to pay damages on account of the negligent or tortious act of another * * *."); Comment, Contribution Among Joint Tortfeasors, 37 Tul.L.Rev. 525, 539 (1963); accord, Schwartz v. Merola Bros. Construction Corporation, 1942, 263 App. Div. 631, 34 N.Y.S.2d 220, 227, motion denied, 289 N.Y. 756, 46 N.E.2d 357, aff'd, 1943, 290 N.Y. 145, 48 N.E.2d 299; see Marquette Casualty Company v. Brown, 1958, 235 La. 245, 103 So.2d 269, 273. As the Court observed in the *Appalachian Corporation* case:

> "It is true that the suit of the injured party grew out of a tort; and, while the present suit is a sequence of the former suit, it does not necessarily follow that the two causes of action are the same, and are to be governed by the same law of prescription. The obligation of the defendant to [the injured party] was that of a tortfeasor, whereas its obligation to the plaintiff is for reimbursement of money paid for and on its behalf, which under the law the defendant was liable for and should have paid.
>
> "It is stated in Corpus Juris, vol. 13, p. 833, that the limitation applicable to an action for contribution is that fixed for an implied contract." 91 So. at 543.

---

8. Compare LSA–C.C. Art. 2103, authorizing contribution, with Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 1952, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318, in which the Supreme Court refused to extend the rule of contribution to noncollision maritime cases.

Hence this claim likewise cannot be asserted solely against Aetna under the Direct Action Statute, as interpreted by the Louisiana court in the *Pennsylvania Fire Insurance Company* case.

b. Fishing Tools' claims:

 (1) Mayronne breached "its duty to \* \* \* Fishing Tools \* \* \* to operate the latter's equipment in a safe and workmanlike manner." If there is such a duty, then a claim may be brought under the Direct Action Statute because Fishing Tools would have been injured by Mayronne's tort.

(2) Mayronne is obliged to indemnify Fishing Tools. This claim cannot be brought under the Direct Action Statute for the reasons stated above with respect to the similar claim by Humble.

Unless Aetna is in the suit for all purposes just because it intervened, I therefore conclude that the motion to dismiss should be granted as to all claims asserted in the cross-claim except the claim that Mayronne breached its duty to Fishing Tools. I express no opinion, however, concerning whether or not there is such a duty as a matter of law. Mayronne had no contract with Fishing Tools; and, even if it had, there was no warranty of workmanlike performance, for that implied warranty does not extend beyond the "shipowner-stevedore originated rule" to cover the relationship of a repair contractor to the platform owner. Ocean Drilling & Exploration Company v. Berry Brothers, Inc., 5 Cir., 1967, 377 F.2d 511.

## II. MAY AETNA BE SUED DIRECTLY BECAUSE IT INTERVENED?

Nor is there any merit to the contention that, because Aetna intervened in this action as Mayronne's subrogee to recover the amount it had paid the plaintiff, it thereby is liable on any action any party might bring against it. Even though Aetna is a party, the cross-claimant must have a cause of action against it.[9] The motion to dismiss is based on the absence of any cause of action in favor of the cross-claimant against Aetna, not on the Court's lack of jurisdiction over it.

Therefore the motion for summary judgment in favor of Aetna is granted except with regard to the cross-claim by Fishing Tools to the extent that cross-claim is predicated on a breach of duty owed by Mayronne to Fishing Tools.

---

9. See, e. g., DeLoach v. Crowley's, Inc., 5 Cir., 1942, 128 F.2d 378, 380; Knox v. First Security Bank of Utah, 10 Cir., 1952, 196 F.2d 112, 119; 1A Barron & Holtzoff (Wright ed.) § 356, p. 363; 2A Moore's Federal Practice, 2d Ed., ¶ 12.08, p. 2245.