REAGAN EQUIPMENT COMPANY and
New Amsterdam Casualty Company

v.

P. J. DONOVAN, Deputy Commissioner,
Seventh Compensation District, Bureau
of Employees' Compensation, U. S. De-
partment of Labor, and Mrs. Hilda
Shows Mitchell, Widow, and Jamie
Eileen Mitchell, Minor Child.

Civ. A. No. 15049.

United States District Court
E. D. Louisiana,
New Orleans Division.

Feb. 9, 1968.

Paul B. Deal, New Orleans, La., for
plaintiffs.

Charles R. Maloney, New Orleans, La.,
for Hilda S. Mitchell and Jamie Eileen
Mitchell.

Leavenworth Colby, Washington, D. C.,
Sp. Asst. to Atty. General, U. S. Dept. of
Justice, Fritz Veters, Asst. U. S. Atty.,
for P. J. Donovan.

## ON MOTION OF PLAINTIFFS FOR SUMMARY JUDGMENT

CASSIBRY, District Judge:

This cause was set for hearing on No-
vember 29, 1967 on motion of plaintiffs,

Reagan Equipment Company and New Amsterdam Casualty Company for summary judgment, was argued by counsel for the respective parties and submitted.

Whereupon, and after due consideration thereof:

It is ordered that the motion of plaintiffs for summary judgment be, and the same is, hereby denied.

### REASONS

Plaintiffs are seeking to enjoin an award of the Deputy Commissioner in favor of Mrs. Hilda Shows Mitchell, individually and on behalf of her minor child, Jamie Eileen Mitchell, granting compensation under the Longshoremen's Act (33 U.S.C. § 901 et seq.) as extended by the Outer Continental Shelf Lands Act (43 U.S.C. § 1331 et seq.) on the ground of lack of jurisdiction, contending that this is a State and not a Federal compensation matter.

As basis for the motion for summary judgment, plaintiffs allege that the Deputy Commissioner committed errors of law in holding that:

1. Decedent was engaged in the business of exploring and recovering oil from the seabed so as to come within the provisions of the Outer Continental Shelf Lands Act.

2. The accident occurred within the geographical limits covered by the Outer Continental Shelf Lands Act.

Before discussing these contentions it is appropriate for the Court to point out that a review of proceedings by the Deputy Commissioner is limited in that the inferences drawn by the Deputy Commissioner are to be accepted unless they are irrational or unsupported by substantial evidence on the record. O'Keeffe v. Smith, Hinchman & Grylls Associates, 380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965). Additionally, the Court notes that, under Section 20(a) of the Longshoremen's Act (33 U.S.C. § 920 (a)), a presumption arises that the claim comes within the provisions of said chapter in the absence of substantial evidence to the contrary.

The decedent referred to in the first assignment of error is James Edward Mitchell who, at the time of the accident, was employed as a mechanic by Reagan Equipment Company and was being flown to a drilling rig in Block 18A of the Grand Isle area for the purpose of repairing an engine on the drilling rig. Operations were being conducted at this location by Humble Oil & Refining Company for the purpose of exploration for and removal of oil from the subsoil and seabed of the Gulf of Mexico. As an attempt was being made to land the helicopter on the drilling platform, the helicopter struck the corner of the landing platform and skidded off the platform into the waters of the Gulf and sank in waters of a depth of 40 to 50 feet. Mitchell died as a result of the injuries he sustained in the accident.

In regard to the plaintiffs' first assignment of error the holding of the Deputy Commissioner was that the decedent was engaged at the time of his injury and death in an employment which was in connection with the exploration for and removal of the natural resources of the subsoil and seabed of the Outer Continental Shelf under the Outer Continental Shelf Lands Act (Public Law 212, approved August 7, 1953). It is plaintiffs' contention that the Act contemplates that the employee must be employed by an employer who is engaged in the business of exploring and recovering oil from the seabed, and that Humble Oil was so engaged, but that Reagan Equipment was not so engaged.

The Outer Continental Shelf Lands Act provides that compensation shall be payable with respect to disability or death of an employee resulting from an injury occurring as a result of "operations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing * * * the natural resources of the subsoil and seabed of the outer Continental Shelf * * *." 43 U.S.C. § 1333(b) (c). It further provides that "the term 'employer' means an employer any of whose employees are employed in such operations." 43 U.S.C.

§ 1333(c) (2). It can be seen from the language of the Act that the Act does not require that the employee himself be engaged in exploring for and recovering natural resources, but requires only that his injuries result from operations conducted for the purpose of exploring, etc. The Act does not require that the employer be engaged in such activities. Plaintiffs' contentions as to the meaning of the Act are refuted by the language of the Act itself.

■ There was substantial evidence to support the Deputy Commissioner's finding that the decedent's employment at the time of the accident was within the contemplation of the Outer Continental Shelf Lands Act.

■ Plaintiffs' second assignment is that the accident did not occur within the geographical limits covered by the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 [1] et seq. but rather that such accident occurred within the territorial waters of Louisiana and therefore benefits under the State Workmen's Compensa-tion statute is the appropriate remedy. Counsel for the parties agree that the site of the accident was longitude 89 degrees, 54 min., and latitude 29 degrees, 10 min., approximately seven miles seaward of the Chapman Line.

In support of this assignment of error, the plaintiffs urge that the Deputy Commissioner should have accepted the boundaries of Louisiana as defined by the Louisiana Legislature in LSA 49:1. A copy of the Louisiana coastline map attached to LSA 49:1 was introduced into evidence to show that the accident occurred within the geographic limits of Louisiana as defined therein.

The Supreme Court in the *Tidelands* cases (United States v. Louisiana et al., 363 U.S. 1, 79, 80 S.Ct. 961, 4 L.Ed.2d 1025 (1960); 364 U.S. 502, 81 S.Ct. 258, 5 L.Ed.2d 247 (1960); 382 U.S. 288, 86 S.Ct. 419, 15 L.Ed.2d 331 (1965)) has stated that the boundaries of Louisiana extend three geographic miles from the coastline. The Deputy Commissioner pointed out at the hearing that the exact

---

1. As defined in 43 U.S.C.A. § 1331, the term " 'outer Continental Shelf' means all submerged lands lying seaward and outside of the area of lands beneath navigable waters as defined in section 1301 of this title, and of which the subsoil and seabed appertain to the United States and are subject to its jurisdiction and control; * * *"

Section 1301 defines the term "lands beneath navigable waters" as follows:

"(a) The term 'lands beneath navigable waters' means—

(1) all lands within the boundaries of each of the respective States which are covered by nontidal waters that were navigable under the laws of the United States at the time such State became a member of the Union, or acquired sovereignty over such lands and waters thereafter, up to the ordinary high water mark as heretofore or hereafter modified by accretion, erosion, and reliction;

(2) all lands permanently or periodically covered by tidal waters up to but not above the line of mean high tide and seaward to a line three geographical miles distant from the coast line of each such State and to the boundary line of each such State where in any case such boundary as it existed at the time such State became a member of the Union, or as heretofore approved by Congress, extends seaward (or into the Gulf of Mexico) beyond three geographical miles, and

(3) all filled in, made, or reclaimed lands which formerly were lands beneath navigable waters, as hereinabove defined;

"(b) The term 'boundaries' includes the seaward boundaries of a State or its boundaries in the Gulf of Mexico or any of the Great Lakes as they existed at the time such State became a member of the Union, or as heretofore approved by the Congress, or as extended or confirmed pursuant to section 1312 of this title but in no event shall the term 'boundaries' or the term 'lands beneath navigable waters' be interpreted as extending from the coast line more than three geographical miles into the Atlantic Ocean or the Pacific Ocean, or more than three marine leagues into the Gulf of Mexico;

"(c) The term 'coast line' means the line of ordinary low water along that portion of the coast which is in direct contact with the open sea and the line marking the seaward limit of inland waters; * * *"

**538**

location of the Louisiana coastline is unresolved; that he did not consider himself bound by the State's delineation of the coastline; and that he considered the Chapman Line to be the coastline for the determination of locations in regard to the Louisiana boundary. In view of the disputed location of the coastline boundary, this Court cannot say that the Deputy Commissioner made an irrational inference, or one unsupported by substantial evidence, when he concluded that this accident occurring seven miles seaward of the Chapman Line was within the geographic area contemplated by the Outer Continental Shelf Lands Act, and when he refused to regard the Louisiana Statute defining the coastline as binding on him in this matter.

The motion of plaintiffs for summary judgment is therefore denied.