**DEUTSCHE–SCHIFFAHRTSBANK
A.G., et al.**

v.

**A. BILBROUGH AND COMPANY,
LTD., et al.**

Civ. A. No. 82–0093.

United States District Court,
E.D. Louisiana.

May 24, 1983.

Gerard A. Bos and Richmond Eustis of Monroe & Leman and T.C.W. Ellis of Faris, Ellis, Cutrone & Gilmore, New Orleans, La., for plaintiffs.

Edward S. Bagley of Terriberry, Carroll, Yancey & Farrell, New Orleans, La., for defendants.

## ORDER

CHARLES SCHWARTZ, Jr., District Judge.

This matter came before the Court on the motion of defendants to dismiss on the grounds of forum non conveniens, or, alternatively, for a stay pending arbitration. Following oral argument and the filing of memoranda, the matter was submitted.

The origins of this action can be traced to two cases now pending in the District Court for the Eastern District of Louisiana, to-wit: *Ryan-Walsh Stevedoring Co. v. M/V MIRIAM, et al.*, Civil Action No. 81–623, Section "F" (A), filed on February 4, 1981, and *In Re: Armadora Maritima Salvadorena, S.A. of Liberia d/b/a Armasol Line*, Bankruptcy No. 81–271, filed on January 11, 1981 in the Bankruptcy Court.

The M/V MIRIAM, formerly owned by plaintiff, Globus Charter Shipping Company (hereafter "Globus"), was demise chartered to Armadora Maritima Salvadorena, S.A. of Liberia (hereafter "Armasal"). Armasal maintained an office and conducted business at 509 Julia Street, New Orleans, Louisiana, and the M/V MIRIAM regularly carried cargo between the Port of New Orleans and various Caribbean and Latin America ports of call. The other plaintiffs, Deutsche-Schiffahrtsbank A.G., Deutsche Schiffahrtsbank A.G., Deutsche Schiffsbeleihungs-Bank A.G. and Staatliche Kreditanstalt Oldenburg-Breman (hereafter "Banks") were the holders of two preferred ship mortgages against the M/V MIRIAM.

Globus and Armasal obtained protection and indemnity coverage under certificates of entry issued by the defendants, the London Steamship Owners' Mutual Insurance Association, Ltd. through its manager and co-defendant herein, A. Bilbrough and Co., Ltd.

On February 18, 1981 and while docked in New Orleans, the M/V MIRIAM was seized by the United States Marshal pursuant to an order of arrest issued in the case of *Ryan-Walsh Stevedoring Co. v. M/V MIRIAM, et al.* That *in rem* action was commenced by Ryan-Walsh to assert a maritime lien for stevedoring services provided Armasal which were unpaid.

Within several months after the seizure of the MIRIAM, numerous additional maritime liens were levied by intervening plaintiffs in the *Ryan-Walsh* action. The response of Armasal was to file bankruptcy.

Plaintiff Banks, in order to protect their interest in the MIRIAM, moved the Bankruptcy Court to authorize sale of the ship at auction. However, as a condition precedent to being permitted by the Bankruptcy Court to bid in the amount of the preferred ship mortgages as the sale price, plaintiff Banks was required to deposit in the registry of the Court 10% of the sales price, or $430,000 to partially satisfy the other maritime lienors and intervening plaintiffs.

On June 10, 1981, the United States Marshal of this District sold the MIRIAM to Deutsche-Schiffahrtsbank, A.G. The sale of the MIRIAM was confirmed on June 18, 1981, reconfirmed July 8, 1981, and the cut-off date for claims established as July 20, 1981.

Plaintiff Banks then called upon defendants to pay the lien claims, contending that pursuant to the charter between Globus and Armasal, there was in force and effect an entry of the M/V MIRIAM with the defendants, which entry covered the claims asserted. Defendants refused to pay the lien claims. Plaintiffs then, in order to purchase the MIRIAM, paid and satisfied the claims.

In the instant action, plaintiffs assert two distinct causes of action against defendants, under the Louisiana Direct Action Statute, for damages, penalties, and attorney's fees arising out of the approximately $312,000 in cargo claims paid by plaintiffs but allegedly

owed by defendants. The causes of action asserted by plaintiffs are "(1) as subrogees of certain cargo claims, whose cargo was damaged by the acts of the defendants' insured, Armasal, and specifically, the M/V MIRIAM, and (2) that the wrongful refusal of the defendants to come forward and pay the claims represents a separate tort committed in Louisiana against plaintiffs." (Supplemental Brief of Plaintiffs, filed March 28, 1983, p. 2)

The Louisiana Direct Action Statute, LSA–R.S. 22:655, provides an "injured person" with "a right of direct action against the insurer," for damages occasioned by the tortious conduct of the insured. It is hornbook law that the statute applies only to torts and not to contract claims. As held by Judge Rubin in *Taylor v. Fishing Tools, Inc.,* 274 F.Supp. 666, 673 (E.D.La.1967):

> [T]he Direct Action Statute does not apply to all claims of any nature whatever just because an insurer is a defendant. The precise terms of the statute grant a right of direct action only to the "injured person or his * * * survivors or heirs * * *." The Louisiana Court of Appeals for the Fourth Circuit has held that the "injured person" accorded a right of direct action is a "person injured as a result of tortious conduct and not one injured as a result of breach of contract." *Pennsylvania Fire Ins. Co. v. Underwriters at Lloyd's,* 140 So.2d 212, 215 (La.App.1962).

The second cause of action asserted by plaintiffs, namely, the wrongful refusal of defendants to pay the cargo claims, is not an action sounding in tort, but rather is clearly an action for breach of contract. Plaintiffs, by their own admission, are claiming damages under this cause of action based on defendants' "refusal to perform under its contractual obligations." (Supplementary Brief, p. 5).

 Plaintiffs do not even assert, nor could they, that this cause of action is based on the tortious conduct of the *insured.* Although it is true that this cause of action grew out of the allegedly tortious conduct

of the insured to the cargo claimants, for the damage occasioned to their cargo, this action is, as plaintiffs assert, a distinctly separate action against the *insurers* for wrongful refusal to pay such claims under their contractual obligations. Clearly, however, any injury arising from the wrongful refusal of the insurer to pay would be an injury resulting from a breach of contract.

Even if the plaintiffs are asserting this cause of action as indemnitees for reimbursement of the monies paid, they still would not be entitled to proceed under the Direct Action Statute.[1] Such a claim for indemnity is based on quasi-contract, also not covered by that statute. See, *e.g. Appalachian Corporation v. Brooklyn Cooperage Co.,* 151 La. 41, 91 So. 539 (1922); *Taylor, supra,* at 673.

Therefore, plaintiffs' second cause of action does not come within the Louisiana Direct Action Statute. As plaintiffs have asserted no other basis for jurisdiction of this cause of action,

IT IS ORDERED that plaintiffs' second cause of action, as set forth above be and it is hereby DISMISSED, pursuant to F.R. C.P. 12(h)(3), for lack of subject matter jurisdiction.

With regard to the first cause of action asserted by the plaintiffs, the Louisiana Direct Action Statute may apply. This action, at least, is arguably based on the tortious conduct of the insured, Armasal, for damage to the cargo claimants, in whose stead the plaintiffs claim to stand as subrogees. For the statute to apply, however, the plaintiffs would still have to show that either (1) the accident or injury to the cargo claimants occurred in Louisiana, or (2) the policy of insurance was issued or delivered in Louisiana. *Esteve v. Allstate Ins. Co.,* 351 So.2d 117 (La.1977); *Kirchman v. Mikula,* 443 F.2d 816 (5th Cir.1971).

Plaintiffs assert, on information and belief, that the damage to the various cargoes occurred in Louisiana and that the policy of insurance was delivered in Louisiana to Ar-

---

1. It is unclear from the complaint and memoranda filed by plaintiffs whether they are proceeding as subrogees, indemnitees, or both, under this cause of action.

**1310**

masal, through its agent located here. Plaintiffs have requested the Court, however, to permit further discovery in order to better substantiate these assertions.

 Even assuming that plaintiffs can substantiate either of these assertions, and thus bring this cause of action within the Louisiana Direct Action Statute, the Court finds that plaintiffs first have a duty to arbitrate any claims against the insurer defendants in London, pursuant to Rule 25 of the agreement under which the certificate of entry was executed.

Rule 25 provides that "any difference or dispute between any Member and the Association" shall be determined by arbitration in London. As members of the defendant association, the owners of the M/V MIRIAM agreed for themselves and for their "heirs, executors, administrators and successors" to observe all of the defendant's Rules.

In this case, plaintiffs must be considered "successors" within the meaning of the policy language, as they became owners of the vessel after its seizure. Moreover, plaintiffs have clearly stepped into the shoes of the insured for purposes of recovering the monies paid the cargo claimants. *See, e.g., Wells Fargo Bank v. London S.S. Owners' Mut. Ins.,* 408 F.Supp. 626, 629, n. 7 (S.D.N.Y.1976).

Plaintiffs concede that were the Louisiana Direct Action Statute inapplicable, "Rule 25 would most likely govern and arbitration would be mandated." (Supplemental Brief, p. 3). Plaintiffs contend, however, that because the statute is applicable, Rule 25 becomes inoperable. The cases cited by plaintiffs are inapposite. Plaintiffs are not standing here as "incidental beneficiaries" of a marine insurance contract, *Ocean Eagle-Limitations Proceedings,* 1974 AMC 1629 (D.P.R.), but rather as successors to that contract. Although plaintiffs claim to be standing as subrogees of the cargo claimants, that position is based on their position as successors in interest to the M/V MIRIAM. Were it not for their ownership of the vessel, under the bankruptcy proceedings, they would not have paid off the cargo claimants and thus would not be in the position of subrogees. It is, therefore, only as successor to the owners of the M/V MIRIAM that the plaintiffs are subrogees of the cargo claimants, and hence they are bound by Rule 25.

Therefore, defendant's alternative application for a stay of the proceedings in this Court pending arbitration must be granted, pursuant to 9 U.S.C. § 3, which provides for such a stay if the issues tendered by plaintiff are "referable to arbitration under an agreement in writing for such arbitration." These requirements are clearly satisfied in this case.

Accordingly, while denying the application for dismissal of plaintiff's first cause of action on the grounds of *forum non conveniens,* the Court hereby GRANTS defendants' motion to stay this action pending the arbitration called for by Rule 25.

IT IS SO ORDERED.